UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUSLAH ABDUL-HAFEEZ,<br><br>         Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>         Defendants. | Case No.: 24-cv-1184-RSH-DDL<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT, AND PLAINTIFF'S REQUEST TO FILE SURREPLY, AND ORDER TO SHOW CAUSE**<br><br>[ECF Nos. 12, 15] |

Before the Court is a motion to dismiss, filed by defendants City of San Diego ("City") and San Diego Police Department ("SDPD") officer Dominic Lazaga (collectively "Defendants"). ECF No. 12. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants Defendants' motion.

## I. BACKGROUND

### A. Plaintiff's Allegations

The instant civil rights action arises from Plaintiff's arrest and detention. The First Amended Complaint ("FAC") alleges as follows.

Plaintiff Abdul-Hafeez is an African American male who engages in "cop watch" duties. ECF No. 11 ¶ 14. Plaintiff is well known to SDPD officers, particularly to the SDPD's bike team. *Id.*

On or around July 9, 2023, Plaintiff was arrested and detained by defendant Lazaga and various Doe SDPD police officers (collectively "Officer Defendants") at or near the parking lot of a Chase Bank branch in downtown San Diego. *Id.* ¶ 13. Plaintiff alleges he heard gunshots and went to retrieve his phone from his car to film responding officers. *Id.* ¶ 15. At the time, Plaintiff was wearing a neon green vest that read: "SESD 4th District First Response Team Copwatch Accountability Unit." *Id.* ¶ 16.

Upon retrieving his phone, Plaintiff was confronted by an unidentified officer from the SDPD's bike team. *Id.* ¶ 15. The officer drew his gun, pointed it at Plaintiff, and ordered him to get on the ground with his hands out to his side. *Id.* Plaintiff immediately complied. *Id.* ¶ 16. Despite this, several officers jumped on top of Plaintiff and forcefully hit him and dug their nails into his skin. *Id.* ¶¶ 17–18. Plaintiff believes one of the officers kneeled on him while he lay prone on the ground. *Id.* ¶ 19.

After Plaintiff was handcuffed and compliant in the prone position, officers pulled at his shoulders in a manner that felt like they were trying to "pull his shoulders apart." *Id.* ¶ 20. The officers also painfully contorted and applied pressure to Plaintiff's arms, shoulders, neck and back, tightly handcuffed his wrists leaving marks, and dragged him by his arms to another location. Plaintiff suffered a fractured shoulder and back and wrist injuries. *Id.* ¶ 21. During his arrest and detention, officers also searched Plaintiff's person and clothing. *Id.* ¶ 23. Plaintiff was detained for hours and ultimately cited under California Penal Code Section 148(a)(1).[1] *Id.* ¶ 24. After his arrest, the Officer Defendants

---

[1] California Penal Code § 148(a)(1) imposes a criminal penalty for "[e]very person who willfully resists, delays, or obstructs any public officer [or] peace officer, . . . in the discharge or attempt to discharge any duty of his or her office or employment." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1165–66 (9th Cir. 2022) (quoting Cal. Penal Code § 148(a)(1)).

collaborated to write a false report describing Plaintiff's actions and the basis for his arrest. *Id.* ¶ 24. No formal charges were ever filed against him. *Id.*

### B. Procedural Background

On July 9, 2024, Plaintiff filed the instant action. ECF No. 1. On September 30, 2025, Plaintiff filed his FAC, the operative pleading in this case. ECF No. 12. The FAC asserts sixteen causes of action, including various federal civil rights claims under 42 U.S.C. § 1983 against the Officer Defendants and the City. FAC ¶¶ 40–139. The FAC also asserts state law claims for intentional infliction of emotional distress, assault, battery, and violation of California Code § 52.1. *Id.* ¶¶ 140–161. On November 19, 2024, the Defendants filed the instant motion to dismiss. ECF No. 12.[2] Plaintiff filed an opposition, and Defendants filed a reply. ECF Nos. 13, 14.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

---

[2] Defendants characterize their motion as a motion to dismiss the entirety of Plaintiff's FAC. ECF No. 12-1 at 18. Nevertheless, Defendants did not move to dismiss Plaintiff's Fourth Amendment claims for unlawful seizure and arrest (Claim 3), unlawful search (Claim 5), and excessive force (Claim 6) or any of Plaintiff's state law claims (Claims 13–16). *See* ECF Nos. 12-1; 14. The Court will, therefore, not address the adequacy of the above claims in this Order. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (courts "will not manufacture arguments for [either party], and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review."); *Ortiz v. Pacific*, 973 F. Supp. 2d 1162, 1185 (E.D. Cal. 2013) ("It is not the Court's role to make arguments for any party.").

The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## III.    ANALYSIS

### A.    Individual Section 1983 Claims (Claims 1-7)

The FAC asserts seven federal civil rights claims under 42 U.S.C. § 1983 against the Officer Defendants. FAC ¶¶ 40–77. Defendants move to dismiss: (1) all of Plaintiff's § 1983 claims asserted against defendant Lazaga for failure to allege personal participation; and (2) claims 1, 2, 4 and 7 on various grounds, including failure to state a claim and for being improperly duplicative. ECF No. 12-1 at 10–12. The Court addresses these arguments below.

#### *1.    General*

"The Civil Rights Act codified in 42 U.S.C. § 1983 provides a cause of action against state officials who deprive a plaintiff of [his] federal constitutional rights." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal

statutory right." *Id.* "[T]he statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff." *Kiger v. Johnson*, No. 223CV1263KJMDBP, 2024 WL 345978, at *2 (E.D. Cal. Jan. 30, 2024).

### 2. Allegations Against Lazaga

Defendants first argue Plaintiff has failed to state a § 1983 claim against defendant Lazaga, because Plaintiff has not adequately alleged how Lazaga personally participated in the deprivation of Plaintiff's constitutional rights. ECF No. 12-1 at 9–10. Plaintiff responds the FAC adequately alleges defendant Lazaga was present at the scene, but failed to intervene to prevent other officers from violating Plaintiff's rights. ECF No. 13 at 21–24.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizens." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (internal quotation marks omitted). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id.* The inquiry as to whether any officer had the opportunity to intercede "is specific to [each] individual defendant." *Adams v. Kraft*, No. 5:10-CV-00602-LHK, 2011 WL 3240598, at *21 (N.D. Cal. July 29, 2011).

Here, the FAC alleges defendant Lazaga and multiple unidentified Doe defendants detained Plaintiff without reasonable suspicion, probable cause, or any other basis in law. FAC ¶ 13. The FAC then alleges the Officer Defendants did not "intervene to stop the beating" of Plaintiff even though he was compliant with their instructions. *Id.* ¶ 22. The FAC does not allege what Lazaga's exact role in Plaintiff's arrest was or establish that Lazaga had a realistic opportunity to intercede. Such conclusory allegations are insufficient to state a plausible claim against Lazaga. *See Shirazi v. Oweis*, No. 5:21-CV-00136-EJD, 2022 WL 445763, at *6 (N.D. Cal. Feb. 14, 2022) (granting motion to dismiss failure to intercede claim where pleading failed to allege specific facts to each individual defendant or establish they had a realistic opportunity to intercede); *Adams*, 2011 WL 3240598, at

*21–22 (granting motion to dismiss where plaintiff merely alleged officers were present at his arrest without any facts as to their exact role in plaintiff's arrest or whether they had the opportunity to intervene). For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's individual § 1983 claims against defendant Lazaga.

### 3. *First Amendment Free Speech (Claim 1)*

In Claim 1 of the FAC, Plaintiff asserts a First Amendment retaliation claim against the Officer Defendants. FAC ¶¶ 40–44. Defendants move to dismiss this clam, contending Plaintiff's claim is conclusory and unsupported by a sufficient factual basis. ECF No. 12-1 at 10. Plaintiff does not address this argument in his Response. *See* ECF No. 13.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks omitted). "To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

Here, Plaintiff alleges the Officer Defendants acted in retaliation for his "cop watch activities." FAC ¶¶ 42–43. As a general principle, however, the "mere speculation that defendants acted out of retaliation is not sufficient" to assert a First Amendment retaliation claim. *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014); *see Hill v. Rivera,* No. ED CV 22-0060-JLS(E), 2022 WL 21663917, at *2 (C.D. Cal. Mar. 14, 2022) (holding that plaintiff's "conclusory and speculative allegations" of retaliation were "legally insufficient to state a claim."); *Cox v. Palmer*, No. 3:08-CV-00663-ECR, 2011 WL 4344047, at *2 (D. Nev. July 27, 2011) (holding a plaintiff's "mere speculation or implication" of a causal relationship was insufficient to set forth a First Amendment retaliation claim). Plaintiff has not provided any meaningful argument as to why such conclusory allegations are sufficient. For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 1.

                4.      *Substantive Due Process and Equal Protection (Claim 2)*

In Claim 2 of the FAC, Plaintiff asserts a Fourteenth Amendment substantive due process and equal protection claim against the Officer Defendants. FAC ¶¶ 45–53. Defendants move to dismiss this claim, contending: (1) Plaintiff's due process claim is duplicative of Plaintiff's Fourth Amendment claims; and (2) Plaintiff's equal protection claim is conclusory and unsupported by a sufficient factual basis. ECF No. 12-1 at 10–12. The Court addresses each of these arguments below.

                a.      *Due Process*

The Court turns first to Plaintiff's due process claim. Here, Plaintiff's Fourteenth Amendment and Fourth Amendment claims both appear based on Plaintiff's search and arrest. FAC ¶¶ 49–50, 54–73. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). In this case, "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against . . . physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Notably, Plaintiff has not provided any meaningful response as to why his Fourteenth Amendment substantive due process and Fourth Amendment claims are not duplicative. The Court therefore finds the dismissal of Plaintiff's substantive due process claim appropriate. *See Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (affirming dismissal of due process claims where Fourth Amendment and not the more generalized notion of substantive due process was appropriate guide for analyzing claims); *see Burns v. City of Concord,* No. C 14-00535 LB, 2014 WL 5794629, at *7 (N.D. Cal. Nov. 6, 2014) (dismissing Fourteenth Amendment substantive due process claim as

duplicative of Fourth Amendment claim); *Fidge v. Lake Cnty. Sheriff's Dep't*, No. 13-CV-5182 YGR, 2014 WL 969297, at *4 (N.D. Cal. Mar. 6, 2014) (same).

### b. Equal Protection

The Court turns next to Plaintiff's equal protection claim. Defendants move to dismiss this claim, contending Plaintiff has failed to plead any facts establishing Plaintiff was treated differently due to his race or that the Officer Defendants acted with discriminatory intent. ECF No. 12-1 at 11–12.

The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, that: "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment[,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Shooter v. Arizona*, 4 F.4th 955, 960 (9th Cir. 2021) (internal quotation marks omitted).

Here, the FAC alleges that the Officer Defendants' actions "amounted to racial profiling" of Plaintiff's status as an African American male. FAC ¶¶ 14, 51. As a general principle, however, conclusory allegations of racial profiling "unsupported by any facts as to how race entered into any decisions" are insufficient to give rise to a plausible § 1983 claim. *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984); *Barnes v. Yand*, No. 120CV00389DADSAB, 2020 WL 1892458, at *3 (E.D. Cal. Apr. 16, 2020) ("Plaintiff's conclusory allegations of racial profiling are insufficient to state a cognizable claim."), *report and recommendation adopted*, No. 120CV00389DADSAB, 2020 WL 3060385 (E.D. Cal. June 9, 2020); *James v. Hayward Police Dep't,* No. C 10-4009 SI PR, 2010 WL 5211503, at *1 (N.D. Cal. Dec. 16, 2010) ("The allegation of racial profiling is dismissed with leave to amend because it is nothing more than a conclusory allegation and that is insufficient to state a claim."). Again, Plaintiff has not provided any meaningful argument as to why such conclusory allegations are sufficient. For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 2.

### 5. *False Imprisonment (Claim 4)*

In Claim 4 of the FAC, Plaintiff asserts a Fourth Amendment false imprisonment claim against the Officer Defendants. FAC ¶¶ 63–68. Defendants request that the Court dismiss or strike this claim as being duplicative of Plaintiff's claim for violation of the Fourth Amendment right against unlawful seizure and arrest. ECF No. 12-1 at 12.

"[A] district court has broad discretion to control its own docket, and that includes the power to dismiss duplicative claims." *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012). Here, Plaintiff contends his false arrest and false imprisonment claims are legally distinct, as his false arrest claim derives from the Officer Defendants confining him without proper legal grounds, while his false imprisonment claim derives from his detention in a patrol vehicle for hours—also without legal grounds. ECF No. 13 at 24.

Here, Plaintiff's false arrest and false imprisonment claims are both predicated on Plaintiff's allegations that the Officer Defendants lacked a lawful basis to arrest him and then did so. The Court concludes that they are duplicative. *See Gil v. Las Vegas Metro. Police Dep't*, No. 223CV02103GMNBNW, 2024 WL 1344853, at *1 (D. Nev. Mar. 29, 2024) (dismissing false imprisonment claim as duplicative of unlawful arrest claim); *Young v. City of Menifee*, No. EDCV171630JGBSPX, 2023 WL 11053618, at *22 (C.D. Cal. Sept. 14, 2023) ("[S]ince any 'false imprisonment' claim Plaintiff may assert is predicated on a lack of probable cause to arrest him, the 'false arrest' and 'false imprisonment' inquiries are the same."); *Raudelunas v. City of Vallejo*, No. 221CV00394KJMJDP, 2022 WL 329200, at *5 (E.D. Cal. Feb. 3, 2022) (noting that in § 1983 actions, courts have treated "false arrest" and "false imprisonment" claims "interchangeably and analyzed them concurrently.") (collecting cases); *Mora v. City of Chula Vista*, No. 20CV779-GPC(AGS), 2021 WL 1165054, at *6 (S.D. Cal. Mar. 26, 2021) (granting plaintiff leave to amend to clarify how false imprisonment and false arrest claims were not duplicative).

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 4.

///

///

### 6. *Conspiracy (Claim 7)*

In Claim 7 of the FAC, Plaintiff alleges a conspiracy by the Officer Defendants to deprive him of his constitutional rights. FAC ¶¶ 74–77. Defendants move to dismiss this claim as conclusory. ECF No. 12-1 at 12–13. Plaintiff does not address this argument in his Response. *See* ECF No. 13.

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal quotation marks omitted). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* As a general principle, "[t]o state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). Conclusory allegations of a conspiracy are not sufficient. *See Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989); *Rouse v. Campagna*, No. 10CV1304 WQH BGS, 2010 WL 4817994, at *1 (S.D. Cal. Nov. 19, 2010) ("[P]leading a conspiracy [under § 1983] requires more than a conclusory allegation that Defendants conspired to deprive Plaintiff's civil rights.").

Here, the FAC alleges only that the Officer Defendants "conspired" to unlawfully search and detain the Plaintiff, use excessive force against him, and create false police reports following his unlawful arrest. FAC ¶¶ 24, 77. Plaintiff has not provided any meaningful argument as to why these allegations are sufficient. For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 7.

### B. *Monell* Section 1983 Claims (Claims 8-12)

The FAC asserts four federal civil rights claims under *Monell* against the City, defendant Lazaga, and "applicable Does." FAC ¶¶ 78–139. Defendants move to dismiss these claims: (1) because *Monell* claims cannot be brought against individual defendants; and (2) for failure to state a claim. ECF No. 12-1 at 9–10, 13–18. The Court addresses these arguments below.

*1. General*

Municipal entities "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipal entity can be held liable only if a "policy or custom" of the municipality "inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

"A plaintiff can satisfy *Monell*'s policy requirement in one of three ways." *Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021). "First, a local government may be held liable when it acts pursuant to an expressly adopted official policy." *Id.* (internal quotation marks omitted). "Second, a public entity may be held liable for a longstanding practice or custom." *Id.* (internal quotation marks omitted). "Third, a local government may be held liable under [Section] 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 974 (internal quotation marks omitted).

*2. Allegations Against Lazaga*

Defendants argue Plaintiff has failed to state a *Monell* claim against defendant Lazaga, because *Monell* claims are brought against public entities and not individuals. ECF No. 12-1 at 9–10. The Court agrees. "A section 1983 claim premised on *Monell* can be asserted only against a municipality or local government unit." *Langham v. City of Union City*, No. 4:22-CV-06284-YGR, 2024 WL 3431342, at *3 (N.D. Cal. Jan. 25, 2024); *Hernandez v. San Bernardino Cnty.*, No. EDCV221101JGBSPX, 2023 WL 3432206, at *5 (C.D. Cal. Jan. 26, 2023) ("A *Monell* claim is, by definition, one brought against a public

entity alone."); *Patino v. Cnty. of Monterey*, No. 22-CV-01564-BLF, 2023 WL 375349, at *4 (N.D. Cal. Jan. 24, 2023) ("*Monell* claims cannot be asserted against Moving Parties in their individual capacities."). The Court therefore **GRANTS** Defendants' motion to dismiss Claims 8-12 against Lazaga.

### 3. Allegations against the City

#### a. Underlying Constitutional Violation

"The threshold question as to whether Plaintiff can establish *Monell* liability is whether a constitutional violation has occurred." *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 934 (S.D. Cal. 2022); *see Lockett v. Cty. of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020) (*Monell* claims are "contingent on a violation of constitutional rights.") (internal quotation marks omitted).

Here, Plaintiff bases his *Monell* claims on four general categories of actions taken by SDPD officers: (1) the harassment, intimidation, citation, and arrest of African-American persons who "exercise their First Amendment rights of freedom of expression"; (2) the contact, detention, search and arrest of Black individuals on the basis of race; (3) the contact, detention, search and arrest of individuals without reasonable suspicion, probable cause, or any other lawful basis; and (4) the use of excessive force by SDPD officers. *See* FAC ¶¶ 80, 81–83, 96, 105, 111, 118.

As the Court holds above, however, Plaintiff has not adequately pleaded individual § 1983 First Amendment free speech or Fourteenth Amendment equal protection claims. To the extent Plaintiff's *Monell* claims are based on these underlying alleged constitutional violations, they also fail. *See Phommathep v. Cnty. of Tehama*, No. 22-15132, 2023 WL 2400802, at *2 (9th Cir. Mar. 8, 2023) ("Plaintiffs' underlying constitutional claims fail, so their *Monell* claim fails, too."); *Loritz v. San Diego Cnty.*, No. 05-56613, 2007 WL 1225361, at *2 (9th Cir. Apr. 25, 2007) ("[I]f there has been no violation of an individual's constitutional rights, then the claims against the municipal defendants must be dismissed."); *Est. of Posard v. Los Angeles Cnty. Sheriff's Dep't,* No. CV 23-10460 PA (EX), 2024 WL 3467775, at *4 (C.D. Cal. May 31, 2024) ("[A] violation of an individual's

constitutional rights is essential to the imposition of *Monell* liability."); *Parker v. Cnty. of Riverside*, No. EDCV 21-1280 JGB (KKX), 2023 WL 11952790, at *8 (C.D. Cal. Nov. 21, 2023) (dismissing *Monell* claim based on malicious prosecution where Court already dismissed individual § 1983 malicious prosecution claim).

Defendants did not move to dismiss Plaintiff's individual § 1983 Fourth Amendment claims for unlawful seizure and arrest, unlawful search, and excessive force. *See* ECF No. 12-1. The Court therefore assumes, without deciding, that the actions of the Officer Defendants alleged in these claims could have violated Plaintiff's constitutional rights. The Court focuses its analysis of Plaintiff's *Monell* claims below accordingly.

          b.      *Practice and Custom (Claim 8)*

In Claim 8 of the FAC, Plaintiff alleges that the City, through the SDPD, maintains an "unconstitutional custom, policy, or practice of authorizing or condoning officers to initiate contacts, detentions, and arrests of individuals without reasonable suspicion or probable cause." FAC ¶ 83. As Plaintiff has not identified an official policy, the Court construes Claim 8 as being based on an unofficial practice, custom or policy. Defendants move to dismiss Claim 8, contending Plaintiff has failed to plead a persistent or widespread policy of unconstitutional conduct. ECF No. 12-1 at 14–15. The Court agrees.

"An unconstitutional policy need not be formal or written to create municipal liability under Section 1983; however, it must be 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Gordon*, 6 F.4th at 974 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 169 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, the FAC cites four studies to support Plaintiff's allegations on the SDPD's customs, policies and practices: (1) a 2016 study conducted by San Diego State University, commissioned by the City of San Diego; (2) a 2019 NBC San Diego report; (3) a report from the Police Scorecard, a nationwide public evaluation of policing in the United States;

and (4) a 2021 report conducted by the Center for Policing Equity, commissioned by the SDPD. FAC ¶¶ 26–34. However, the FAC does not allege, nor does Plaintiff explain, how any of these reports or studies are directed to the contact, search, and arrest of individuals by SDPD officers without reasonable suspicion, probable cause, or other lawful basis.

Consequently, Plaintiff has not pleaded how any other person was subject to contact, detention, or arrest by SDPD police officers without reasonable suspicion or probable cause. This is not sufficient to set forth a plausible *Monell* claim. *See, e.g.*, *Mitchell v. Cnty. of Contra Costa*, No. 21-CV-05014-DMR, 2022 WL 526161, at *5 (N.D. Cal. Feb. 22, 2022) (dismissing *Monell* claim where "[t]he complaint does not allege that any other person was subjected to similar unconstitutional conduct"); *Hensley v. City of Upland, CA*, No. CV 20-2462-CBM-(ASX), 2021 WL 1585212, at *4 (C.D. Cal. Mar. 1, 2021) (dismissing *Monell* claim because the complaint did not identify "any specific incidents . . . other than the incident involving Plaintiff"); *Nixon v. Buck*, No. CV1904610CJCSHSX, 2019 WL 12377857, at *4 (C.D. Cal. Nov. 13, 2019) (dismissing *Monell* claim where allegations of an unconstitutional policy was "premised entirely on Plaintiff's own experience"); *Young v. City of Menifee*, No. EDCV171630JGBSPX, 2019 WL 4238880, at *6 (C.D. Cal. Aug. 2, 2019) (dismissing *Monell* claim when plaintiff failed to "identify any specific instances," other than his own experience, "where [defendant] engaged in such [unconstitutional] conduct"). For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 8.

      *c.*  *Failure to Train (Claim 9)*

In Claims 9 of the FAC, Plaintiff alleges that the City, through the SDPD, failed to properly train its officers "on the dangers of kneeling on a prone individual's back and piling onto compliant individuals." FAC ¶ 96. Defendants move to dismiss, contending Plaintiff has not alleged facts establishing SDPD Officers repeatedly kneeled on prone individuals. ECF No. 12-1 at 16. The Court agrees.

A "[f]ailure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal

employees." *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). "Mere negligence will not suffice to show *Monell* liability." *Id.* "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train, though there exists a narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference." *Flores v. Cty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014) (internal quotation marks omitted).

Here, Plaintiff fails to adequately allege a pattern of similar constitutional violations to plausibly support a claim for failure to train. The studies Plaintiff cite do not discuss SDPD officers kneeling on a prone individual's back. Plaintiff also does not explain how a pattern of similar constitutional violations has been pleaded or how his case is one of the rare instances in which a pattern is unnecessary. *Connick*, 563 U.S. at 63 (holding district attorney could not have been put on notice that "specific training was necessary" to avoid a constitutional violation based on incidents that were not similar to the violation at issue); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required."). For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 9.

        d.    *Failure to Supervise (Claims 10 and 11)*

In Claims 10 and 11 of the FAC, Plaintiff alleges that the City, through the SDPD, failed to supervise or discipline officers on unlawful detentions and the use of excessive

force. FAC ¶¶ 104–116. These claims fail for the same reasons as Plaintiff's failure to train claim above. *See Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989) ("[*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)] dealt specifically with inadequate training. We see no principled reason to apply a different standard to inadequate supervision."); *Russell v. City of San Diego*, No. 24CV0527-GPC(SBC), 2025 WL 297034, at *7 (S.D. Cal. Jan. 24, 2025) ("A claim of failure to supervise and discipline is subject to the same standard as a failure to train claim."). Again, Plaintiff has not plausibly pleaded a pattern of similar constitutional violations or explained how this is one of the rare cases in which a pattern is unnecessary. For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claims 10 and 11.

e. *Failure to Properly Screen and Hire (Claim 12)*

In Claim 12 of the FAC, Plaintiff alleges that the City, through the SDPD, failed to properly screen and hire its police officers "in a manner consistent with constitutional requirements and public safety" resulting in officers who have exhibited a pattern of unlawful stops and excessive force. FAC ¶¶ 117–139. Defendants move to dismiss this claim as conclusory. ECF No. 12-1 at 17–18. Plaintiff argues the Court may infer the City's negligent hiring and screening practices based on the Officer Defendants' actions in this case. ECF No. 13 at 20–21.

"Deliberate indifference in [the failure to properly screen and hire] context is only present 'where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Whyte v. City of San Diego*, No. 21CV1159-LAB-MDD, 2022 WL 17491178, at *3 (S.D. Cal. Dec. 7, 2022) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997)).

Here, the FAC fails to allege any facts regarding the SDPD's hiring policies or allege any facts regarding the Officer Defendants' backgrounds to support the allegation the City was "deliberately indifferent" in their hiring processes. *See Whyte*, 2022 WL 17491178, at

*3 (dismissing failure to properly screen and hire claim where plaintiff failed to provide facts regarding the City's hiring practices or officer defendant's background to support deliberate indifference in screening and hiring process); *Amaral v. City of San Diego*, No. 17-CV-02409-L-JMA, 2018 WL 3302987, at *3 (S.D. Cal. July 5, 2018) (same). Plaintiff does not cite any authority to support his argument that the Court may "infer" the City's negligent hiring and screening practices based on such conclusory allegations. For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 12.

## IV.  LEAVE TO AMEND

The Parties dispute whether Plaintiff should be given leave to amend in this case. *Compare* ECF No. 13 at 6 *with* ECF No. 14 at 2. Although Plaintiff has already amended his complaint once, he may be able to cure the defects identified herein by further amendment. *See Knappenberger v. City of Phoenix.*, 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted). Nevertheless, the Court also concludes one of the defects identified above cannot be cured—as explained above. The Court therefore **GRANTS IN PART** and **DENIES IN PART** Plaintiff's leave to amend the claims that are dismissed herein.[3]

## V.  DOE DEFENDANTS

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ.

---

[3]  Plaintiff also requested leave to file a surreply to clarify that: (1) he is requesting leave to amend; and (2) to address the sufficiency of Plaintiff's *Monell* claims. ECF No. 15 at 5. In light of the Court's ruling allowing Plaintiff a further opportunity to amend, the Court does not find a surreply warranted. Plaintiff's request is therefore **DENIED.**

P. 4(m). The 90-day deadline under Rule 4(m) applies to Doe defendants. *See Williams v. Cnty. of Los Angeles*, No. 23-55155, 2024 WL 2862587, at *1 (9th Cir. June 6, 2024); *Jackson v. McMahon*, No. EDCV190548SBPVC, 2021 WL 3208029, at *2 (C.D. Cal. July 29, 2021) ("The 90-day service deadline under Rule 4(m) applies to Doe Defendants.").

Plaintiff's deadline to serve the Doe defendants in this case has passed and there is no indication on the docket that Plaintiff has identified the Doe defendants or properly served them. Plaintiff is therefore **ORDERED TO SHOW CAUSE** as to why the Doe defendants should not be dismissed for failure to effect service under Rule 4(m). Plaintiff must respond to the Court's Order to Show Cause in writing within **fourteen (14) days** of the date of this Order.

## VI. CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' motion to dismiss as follows:

1. The Court **GRANTS** Defendants' motion to dismiss all individual § 1983 claims (claims 1-7) against defendant Lazaga **WITHOUT PREJUDICE**;

2. The Court **GRANTS** Defendants' motion to dismiss all *Monell* claims (claims 8-12) against defendant Lazaga **WITH PREJUDICE**;

3. The Court **GRANTS** Defendants' motion to dismiss Claims 1-2, 4, 7, and 8-12 **WITHOUT PREJUDICE.**

If Plaintiff chooses to file a Second Amended Complaint, Plaintiff must do so within **fourteen (14) days** of the date of this Order. Defendants' time to respond to the operative pleading will begin to run on the earlier of the date Plaintiff files a Second Amended Complaint or **fourteen (14) days** from the date of this Order.

**IT IS SO ORDERED.**

Dated: March 4, 2025

Hon. Robert S. Huie
United States District Judge