1
2
3
4
5
6
7
8                           UNITED STATES DISTRICT COURT
9                         SOUTHERN DISTRICT OF CALIFORNIA
10
11    MUSLAH ABDUL-HAFEEZ,                    Case No.: 24-cv-1184-RSH-DDL
12                              Plaintiff,
                                             **ORDER ON DEFENDANTS'**
13    v.                                      **MOTION TO DISMISS**
                                             **PLAINTIFF'S SECOND AMENDED**
14    CITY OF SAN DIEGO, et al.,              **COMPLAINT**
15                              Defendants.
                                             [ECF No. 25]
16
17
18
19
20         Before the Court is a motion to dismiss, filed by defendants City of San Diego
21    ("City") and San Diego Police Department ("SDPD") officer Dominic Lazaga (collectively
22    "Defendants"). ECF No. 25. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the
23    motion presented appropriate for resolution without oral argument. For the reasons below,
24    the Court grants in part and denies in part Defendants' motion.
25    **I.    BACKGROUND**
26         **A.    Plaintiff's Allegations**
27         The instant civil rights action arises from Plaintiff's arrest and detention. The Second
28    Amended Complaint ("SAC") alleges as follows.

Plaintiff Muslah Abdul-Hafeez is an African American male who routinely engages in "cop watch" duties on Saturday nights. SAC ¶¶ 14–15. Plaintiff is well known to SDPD officers, particularly to the SDPD's bike team. *Id.* Plaintiff has encountered members of the team multiple times in the past. *Id.* Additionally, Plaintiff has demonstrated against SDPD officers and rendered assistance to individuals detained by the SDPD. *Id.* ¶¶ 22–23.

On or around July 9, 2023, Plaintiff was arrested and detained by defendant Lazaga and various Doe SDPD police officers (collectively "Officer Defendants") at or near the parking lot of a Chase Bank branch in downtown San Diego. *Id.* ¶ 13. According to Plaintiff, he heard gunshots and went to retrieve his phone from his car to film responding officers. *Id.* ¶ 24. At the time, Plaintiff was wearing a neon green vest that read: "SESD 4th District First Response Team Copwatch Accountability Unit." *Id.* ¶ 25.

Upon retrieving his phone, Plaintiff was confronted by an unidentified officer from the SDPD's bike team. *Id.* ¶ 24. The officer drew his gun, pointed it at Plaintiff, and ordered him to get on the ground with his hands out to his side. *Id.* ¶¶ 24–25. Plaintiff immediately complied. *Id.* ¶ 25. Despite this, several officers jumped on top of Plaintiff and forcefully hit him and dug their nails into his skin. *Id.* ¶¶ 26–27. The SAC alleges upon information and belief that one of the officers kneeled on Plaintiff while he lay prone on the ground. *Id.* ¶ 28.

After Plaintiff was handcuffed and compliant in the prone position, officers pulled at his shoulders in a manner that felt like they were trying to "pull his shoulders apart." *Id.* ¶ 29. The officers also painfully contorted and applied pressure to Plaintiff's arms, shoulders, neck and back, tightly handcuffed his wrists leaving marks, and dragged him by his arms to another location. *Id.* Plaintiff suffered a fractured shoulder and back and wrist injuries. *Id.* ¶ 30. During his arrest and detention, officers also searched Plaintiff's person and clothing. *Id.* ¶ 32. Plaintiff was detained for hours and ultimately cited under California

Penal Code Section 148(a)(1).[1] *Id.* ¶ 33. No charges were thereafter filed against him. *Id.* ¶ 34.

## B. Procedural Background

On July 9, 2024, Plaintiff filed the instant action. ECF No. 1. On September 30, 2024, Plaintiff filed his First Amended Complaint ("FAC"). ECF No. 11. The FAC asserted sixteen causes of action, including various federal civil rights claims under 42 U.S.C. § 1983 against the Officer Defendants and the City. FAC ¶¶ 40–139. The FAC further asserted state law claims for intentional infliction of emotional distress, assault, battery, and violation of California Code § 52.1. *Id.* ¶¶ 140–161. On October 28, 2024, Defendants filed a motion to dismiss Plaintiff's FAC. ECF No. 12.

On March 4, 2025, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 16. Specifically, the Court granted Defendants' motion to dismiss: (1) Plaintiff's individual § 1983 against defendant Lazaga; (2) Plaintiff's First Amendment retaliation, substantive due process, equal protection, false imprisonment, and conspiracy claims against the Officer Defendants; and (3) Plaintiff's *Monell* claims. *Id.* The Court additionally ordered Plaintiff to show cause why the Doe defendants in this case should not be dismissed for failure to effectuate service under Federal Rule of Civil Procedure 4(m). *Id.* at 17–18.

On March 27, 2025, Plaintiff filed his SAC. The SAC asserts fourteen causes of action, including federal civil rights claims under 42 U.S.C. § 1983 against the Officer Defendants for First Amendment retaliation (Claim 1), violation of equal protection (Claim 2), unlawful seizure and arrest (Claim 3), unlawful search (Claim 4), excessive force (Claim 5), and conspiracy (Claim 6). SAC ¶¶ 46–108. Plaintiff also asserts *Monell* claims

---

[1]    California Penal Code § 148(a)(1) imposes a criminal penalty for "[e]very person who willfully resists, delays, or obstructs any public officer [or] peace officer, . . . in the discharge or attempt to discharge any duty of his or her office or employment." *Vanegas v. City of Pasadena*, 46 F.4th 1159, 1165–66 (9th Cir. 2022) (quoting Cal. Penal Code § 148(a)(1)).

against the City and Officer Defendants for the maintenance of an unconstitutional policy, custom or procedure (Claim 7), failure to properly train (Claim 8), failure to properly supervise (Claim 9), and failure to discipline (Claim 10). *Id.* ¶¶ 109–171. Lastly, the SAC asserts state law claims against the City and Officer Defendants for intentional infliction of emotional distress (Claim 11), assault (Claim 12), battery (Claim 13), and violation of California Civil Code § 52.1 (Claim 14). *Id.* ¶¶ 172–194. On the same day, Plaintiff filed a response to the Court's Order to Show Cause stating that Plaintiff had identified the Doe defendants and requesting that the Court grant Plaintiff an extension of time to effectuate service. ECF No. 24 at 4–6.

On April 10, 2025, Defendants filed the instant motion to dismiss. ECF No. 25.[2] Plaintiff filed an opposition, and Defendants filed a reply. ECF Nos. 27; 31.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

---

[2]    Defendants characterize their motion as a motion to dismiss the entirety of Plaintiff's SAC. ECF No. 25-1 at 8. However, Defendants do not move to dismiss Plaintiff's Fourth Amendment claims for unlawful seizure and arrest (Claim 3) or unlawful search (Claim 4) claims against any of the Officer Defendants other than defendant Lazaga. *See id.* at 9–14. Defendants also do not move to dismiss Plaintiff's state law claims as to any defendant other than defendant Lazaga. *Id.* at 20–21. The Court will not therefore address the adequacy of these claims in this Order. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (courts "will not manufacture arguments for [either party], and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review."); *Ortiz v. Pacific*, 973 F. Supp. 2d 1162, 1185 (E.D. Cal. 2013) ("It is not the Court's role to make arguments for any party.").

The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

## III.    ANALYSIS

### A.    Individual Section 1983 Claims (Claims 1-6)

The SAC asserts six federal civil rights claims under 42 U.S.C. § 1983 against the Officer Defendants. SAC ¶¶ 46–108. Defendants move to dismiss: (1) Plaintiff's claims for First Amendment retaliation, violation of equal protection, and conspiracy against the Officer Defendants for failure to state a claim; and (2) the individual § 1983 claims asserted against defendant Lazaga for failure to allege personal participation. ECF No. 25-1 at 9–14. The Court addresses these arguments below.

#### 1.    General

"The Civil Rights Act codified in 42 U.S.C. § 1983 provides a cause of action against state officials who deprive a plaintiff of [his] federal constitutional rights." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal

statutory right." *Id.* "[T]he statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff." *Kiger v. Johnson*, No. 223CV1263KJMDBP, 2024 WL 345978, at *2 (E.D. Cal. Jan. 30, 2024).

### 2. *First Amendment Retaliation (Claim 1)*

In Claim 1 of the SAC, Plaintiff asserts the Officer Defendants violated his rights under the First Amendment by arresting him in retaliation for his "cop watch" activities. SAC ¶¶ 46–56. Defendants argue Plaintiff has not set forth a sufficient factual basis for this claim. ECF No. 25-1 at 11–12.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal quotation marks omitted). "To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

Here, Plaintiff's attempt to film police activity in public was constitutionally protected by the First Amendment. *See Askins v. United States Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) ("The First Amendment protects the right to photograph and record matters of public interest. This includes the right to record law enforcement officers engaged in the exercise of their official duties in public places.") (internal citations omitted); *Barich v. City of Cotati*, No. 15-CV-00350-VC, 2015 WL 6157488, at *1 (N.D. Cal. Oct. 20, 2015) ("Filming a police officer on duty is protected First Amendment activity.").

Next, Plaintiff's arrest constituted an adverse action that would have chilled a person of ordinary firmness from the future exercise of their First Amendment rights. *See Ford v. City of Yakima,* 706 F.3d 1188, 1194 (9th Cir. 2013) ("[A] person of ordinary firmness

would be chilled from future exercise of his First Amendment rights if he were booked and taken to jail in retaliation for his speech."); *DeCastro v. Las Vegas Metro. Police Dep't*, No. 2:23-CV-00580-APG-EJY, 2024 WL 4189939, at *18 (D. Nev. Sept. 12, 2024) ("Arresting a person for exercising [their First Amendment] rights would chill the First Amendment activities of a person of ordinary firmness."); *see also Savage v. Segura*, No. 23-55812, 2025 WL 900433, at *2 (9th Cir. Mar. 25, 2025) ("Being arrested after voicing anti-police views would chill a person of ordinary firmness from engaging in future First Amendment activity.").

Finally, the nature of Plaintiff's arrest reasonably suggests a retaliatory motive. The SAC alleges Plaintiff regularly engages in "cop watch" duties in downtown San Diego and encountered members of the SDPD's bike team multiple occasions in the past. SAC ¶¶ 13–14, 20. According to Plaintiff, at the time of the incident, Plaintiff was wearing a neon green vest that read: "SESD 4th District First Response Team Copwatch Accountability Unit" and was retrieving his phone to film responding police officers. *Id.* ¶¶ 23–24. Plaintiff further alleges he was one of only three individuals arrested—two of whom were allegedly involved in the shooting itself and that he was the only person on the scene filming the officers. *Id.* ¶ 50.

Defendants contend that rather than being retaliatory, it is more likely Plaintiff was detained because he was walking through a shooting scene and ignoring repeated commands by police officers. ECF No. 31 at 4–5. This is not, however, the version of the facts pleaded in Plaintiff's SAC and the Court's task at this stage is "not to resolve any factual dispute[s]." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013); *Snow v. Earthworks Nw., Inc.*, No. C07-1729-JCC, 2008 WL 11506781, at *2 (W.D. Wash. Jan. 24, 2008) ("[B]y essentially asking the Court to adopt their version of the facts, Defendants misapprehend their burden as the moving party on a motion to dismiss under Rule 12(b)(6). The Court must take the facts alleged by Plaintiff as true, in order to decide whether Plaintiff could be entitled to the relief requested.").

///

Drawing all inferences in Plaintiff's favor, the Court holds the allegations set forth in the SAC are sufficient to plead a plausible First Amendment retaliation claim. For these reasons, the Court **DENIES** Defendants' motion to dismiss Claim 1.

### 3.    Equal Protection (Claim 2)

In Claim 2 of the SAC, Plaintiff asserts the Officer Defendants violated his rights under the Equal Protection Clause by arresting him based on his race. SAC ¶¶ 57–70. Defendants argue Plaintiff has failed to plead any facts establishing that he was treated differently due to his race or that any [the Officer Defendants acted with discriminatory intent. ECF No. 25-1 at 12–13.

The Equal Protection Clause of the Fourteenth Amendment provides, in relevant part, that: "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. "A government entity has discretion in prosecuting its criminal laws, but enforcement is subject to constitutional constraints." *Rosenbaum v. City & Cnty. of S.F.*, 484 F.3d 1142, 1152 (9th Cir. 2007); *Ae Ja Elliot-Park v. Manglona*, 592 F.3d 1003, 1006 (9th Cir. 2010) ("[W]hile [a police] officer['s] discretion in deciding whom to arrest is certainly broad, it cannot be exercised in a racially discriminatory fashion."). "To prevail on its claim under the equal protection clause of the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Rosenbaum*, 484 F.3d at 1152. "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). "To show discriminatory purpose, a plaintiff must establish that the decision-maker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Rosenbaum*, 484 F.3d at 1153 (internal quotation marks omitted).

Here, Plaintiff alleges that at the time of the incident, a crowd of approximately twenty to thirty other individuals of varying racial backgrounds were also present. *Id.* ¶¶ 62, 65. Plaintiff alleges that despite this the Officer Defendants did not question any

non-Black bystander. *Id.* ¶ 67. Plaintiff further alleges he was one of only three individuals arrested, all of whom were Black. *Id.* ¶ 66.[3]

To support his claim the Officer Defendants' actions were motivated at least in part based on race, Plaintiff cites: (1) a 2021 report conducted by the Center for Policing Equity, commissioned by the SDPD; and (2) a 2016 study conducted by San Diego State University, commissioned by the City of San Diego. *Id.* ¶¶ 68–69, 116. As alleged, the 2021 report analyzed SDPD data on traffic stops, non-traffic stops, and use of force incidents between 2016-2020, controlling for crime and poverty rates and neighborhood demographics and found Black individuals were 4.2 times more likely to experience non-traffic stops than White individuals. *Id.* ¶¶ 38, 68. According to the 2016 San Diego State University study, Black individuals were disproportionately subject to searches compared to White individuals. *Id.* ¶ 69.

Defendants contend that rather than being motivated by race, it is more likely the Officer Defendants' actions were taken based upon probable cause to believe a crime had occurred. ECF No. 25-1 at 13. In support, Defendants argue that SDPD Officers did not confront or arrest other Black bystanders in the crowd. ECF Nos. 25-1 at 13; 31 at 5. It is true the SAC does not indicate whether there were other Black bystanders in the crowd who may not have been confronted or questioned. However, Plaintiff does allege that all three individuals arrested at the scene were Black. SAC ¶ 66. At this early juncture, the Court concludes Plaintiff's allegations concerning the circumstances of his own arrest, combined with the data allegedly set forth in the 2021 Center for Policing Equity and 2016 San Diego State University reports, are together sufficient to allege an equal protection claim. *See Wright v. City of San Diego*, No. 24CV2089-GPC(BLM), 2025 WL 1222507, at *3–4 (S.D. Cal. Apr. 28, 2025) (holding plaintiff's allegation regarding his arrest combined with statistical evidence regarding the disparate treatment of Black individuals

---

[3] The other two individuals were allegedly connected to the shooting itself. *Id.* ¶ 50.

was sufficient to allege a plausible equal protection claim); *Ze Chang v. Cnty. of Siskiyou*, 746 F. Supp. 3d 808, 826 (E.D. Cal. 2024) (holding a plausible equal protection claim had been pleaded where plaintiffs had alleged, among other facts, "evidence of gross statistical disparities"); *Harper v. Cnty. of Monterey*, No. 18-CV-03695-YGR, 2020 WL 3833393, at *1 (N.D. Cal. July 8, 2020) (plaintiff's allegation he personally witnessed differential treatment while in custody sufficient to plead an equal protection claim). For these reasons, the Court **DENIES** Defendants' motion to dismiss Claim 2.

### 4. *Conspiracy (Claim 6)*

In Claim 6 of the SAC, Plaintiff alleges the Officer Defendants conspired to: (1) unlawfully detain and search Plaintiff without probable cause or reasonable suspicion; and (2) use excessive force during Plaintiff's detention and arrest. SAC ¶ 95. Defendants argue Plaintiff's conspiracy claim should be dismissed as it improperly conflates conspiracy with a failure to intercede. ECF No. 25-1 at 13–14.

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (internal quotation marks omitted). "Such an agreement need not be overt, and may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id*. As a general principle, "[t]o state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989). Conclusory allegations of a conspiracy are not sufficient. *See Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989); *Rouse v. Campagna*, No. 10CV1304 WQH BGS, 2010 WL 4817994, at *1 (S.D. Cal. Nov. 19, 2010) ("[P]leading a conspiracy [under § 1983] requires more than a conclusory allegation that Defendants conspired to deprive Plaintiff's civil rights.").

Plaintiff has not alleged sufficient facts to plausibly suggest that the Officer Defendants agreed to violate his constitutional rights. Instead, Plaintiff's conspiracy claim appears predicated on his allegations the Officer Defendants failed to intercede on his

behalf at the time of the incident or act against one another afterwards. SAC ¶¶ 99–107. Specifically, Plaintiff alleges that the "uniform decision" of the Officer Defendants to remain silent, not to intervene, and withhold complaints or reports suggests a "tacit" meeting of the minds. *Id.* ¶ 104.

"Mere association does not make a conspiracy." *Shirazi v. Oweis,* No. 5:21-CV-00136-EJD, 2022 WL 445763, at *6 (N.D. Cal. Feb. 14, 2022). Here, Plaintiff's conclusory allegations the Officer Defendants failed to take any action are not sufficient to support the existence of a conspiracy. *See Pryor v. SF City & Cnty.*, No. C -12-02696 (EDL), 2013 WL 12199455, at *9 (N.D. Cal. Sept. 19, 2013) (granting motion to dismiss where plaintiff "conflated conspiracy with failure to intervene"), *aff'd sub nom. Pryor v. City & Cnty. of San Francisco*, 672 F. App'x 751 (9th Cir. 2017); *Galindo v. City of San Mateo*, No. 16-CV-03651-EMC, 2016 WL 7116927, at *4 (N.D. Cal. Dec. 7, 2016) (holding allegation that one officer did not act against another was insufficient to establish a plausible claim for conspiracy). For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 6.

### 5. *Allegations Against Lazaga*

The Court next turns to Plaintiff's claims against defendant Lazaga. Defendants argue Plaintiff has failed to state a § 1983 claim against defendant Lazaga because Plaintiff has not adequately alleged how Lazaga personally participated in the deprivation of Plaintiff's constitutional rights. ECF No. 25-1 at 9–10. Plaintiff responds the FAC adequately alleges that defendant Lazaga: (1) used excessive force against him and (2) failed to intercede to prevent other officers from violating his rights. ECF No. 27 at 9–10.

### a. *Excessive Force (Claim 5)*

A claim that officers used excessive force "in the context of an arrest or investigatory stop of a free citizen" is analyzed under the Fourth Amendment's prohibition against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Ames v. King Cnty.*, 846 F.3d 340, 348 (9th Cir. 2017) (holding the use of force "is a seizure that is subject to the Fourth Amendment's reasonableness requirement"). "Under the Fourth Amendment,

officers may use only such force as is 'objectively reasonable' under the circumstances." *Ames*, 846 F.3d at 348 (citing *Graham*, 490 U.S. at 397).

Here, the SAC alleges Plaintiff was handcuffed and taken to a patrol vehicle. SAC ¶ 82. While three SDPD officers were present, Plaintiff complied with an instruction to enter the vehicle through an open door. *Id.* After Plaintiff seated himself, one of the officers opened the opposite car door, yelled and then grabbed Plaintiff by his cuffed wrists forcibly dragging him to the other end of the patrol car. *Id.* According to Plaintiff, defendant Lazaga was one of three officers present and Plaintiff "believes" that Lazaga was the officer who forcibly dragged him. *Id* ¶¶ 83–84.[4]

Taking the facts alleged as true, Plaintiff has sufficiently set forth a plausible excessive force claim against defendant Lazaga. *See Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (reversing district court's grant of summary judgment where plaintiff set forth facts that officers used excessive force by unreasonably injuring her wrist and arm as they handcuffed her); *Villa v. Cnty. of San Diego*, No. 20-CV-537-CAB-NLS, 2020 WL 3100045, at *4 (S.D. Cal. June 11, 2020) (holding plaintiff alleged a plausible excessive force claim by alleging he was restrained and unarmed when a deputy punched him and bent his fingers).

Defendant's argument that Plaintiff must have either lacked the ability or refused to enter the vehicle as instructed is unpersuasive. ECF No. 31 at 2–3. At this stage of the proceedings, "the Court's inquiry is limited to whether Plaintiff has pleaded sufficient facts to state a claim for excessive force." *R.A. ex rel. Penrose v. Morris*, No. 5:14-CV-0077-ODW PJW, 2015 WL 1191266, at *5 (C.D. Cal. Mar. 16, 2015). At the pleading stage, it

---

[4]    "The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (quoting *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010)).

is not the Court's task to resolve a factual dispute as to whether Lazaga's actions were taken in response to Plaintiff's willful resistance. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (court's task on a motion to dismiss is "not to resolve any factual dispute").

For these reasons, the Court **DENIES** Defendants' motion to dismiss claim 5 against defendant Lazaga.

> #### b.    *Failure to Intercede (Claims 1-4)*

Plaintiff additionally asserts First Amendment retaliation, equal protection, unlawful seizure, and unlawful search claims against defendant Lazaga predicated on Lazaga's alleged failure to intervene to prevent other officers from engaging in constitutional violations. SAC ¶¶ 46–78; ECF No. 27 at 9. Defendants move to dismiss these claims as conclusory. ECF No. 31 at 1–3.

"[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizens." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (internal quotation marks omitted). "Importantly, however, officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Id*. "Furthermore, bystander officers only have a duty to stop a violation when they know or have reason to know of the constitutional violation." *Monteilh v. Cnty. of L.A.*, 820 F. Supp. 2d 1081, 1092 (C.D. Cal. 2011). The inquiry as to whether any officer had the opportunity to intercede "is specific to [each] individual defendant." *Adams v. Kraft*, No. 5:10-CV-00602-LHK, 2011 WL 3240598, at *21 (N.D. Cal. July 29, 2011).

Here, the SAC fails to allege any facts indicating whether Lazaga was involved in the decision to detain, arrest, and search Plaintiff. Instead, the SAC alleges Lazaga was one of three officers present at a patrol vehicle *after* Plaintiff had already been seized and handcuffed. *Id*. ¶¶ 83–84. Plaintiff has not explained how these allegations are sufficient to demonstrate Lazaga had a realistic opportunity to intercede as to any other alleged constitutional violations. For example, Plaintiff does allege whether Lazaga was even *present* when Plaintiff was seized and then subsequently searched. *See Sandoval on behalf*

*of B.U. v. City of Nat'l City*, No. 22CV1657-GPC(AGS), 2023 WL 3295590, at *6 (S.D. Cal. May 5, 2023) ("Officers do not have a realistic opportunity to intercede when they are not present at the time of a constitutional violation.").

For these reasons, the Court **GRANTS** Defendants' motion to dismiss claims 1-4 against defendant Lazaga.[5]

## B.    *Monell* Section 1983 Claims (Claims 7-10)

The SAC asserts four federal civil rights claims under *Monell* against the City, defendant Lazaga, and "applicable Does." SAC ¶¶ 109–171. Defendants move to dismiss these claims for failure to state a claim. ECF No. 25-1 at 14–20. The Court addresses each of these *Monell* claims below.

### 1.    General

Municipal entities "cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipal entity can be held liable only if a "policy or custom" of the municipality "inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

"A plaintiff can satisfy *Monell*'s policy requirement in one of three ways." *Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021). "First, a local government may be held liable when it acts pursuant to an expressly adopted official policy." *Id.* (internal quotation marks omitted). "Second, a public entity may be held liable for a longstanding practice or

---

[5]    As discussed above, the Court dismissed Plaintiff's conspiracy claim against *all* the Officer Defendants.

custom." *Id.* (internal quotation marks omitted). "Third, a local government may be held liable under [Section] 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id.* at 974 (internal quotation marks omitted).

### 2. Allegations Against Individual Defendants

In its March 4, 2025 Order, the Court dismissed Plaintiff's *Monell* claims against defendant Lazaga on the grounds that *Monell* claims are not cognizable against individual defendants. ECF No. 16 at 11–12; *see Langham v. City of Union City*, No. 4:22-CV-06284-YGR, 2024 WL 3431342, at *3 (N.D. Cal. Jan. 25, 2024) ("A section 1983 claim premised on *Monell* can be asserted only against a municipality or local government unit."); *Hernandez v. San Bernardino Cnty.*, No. EDCV221101JGBSPX, 2023 WL 3432206, at *5 (C.D. Cal. Jan. 26, 2023) ("A *Monell* claim is, by definition, one brought against a public entity alone."); *Patino v. Cnty. of Monterey*, No. 22-CV-01564-BLF, 2023 WL 375349, at *4 (N.D. Cal. Jan. 24, 2023) ("*Monell* claims cannot be asserted against Moving Parties in their individual capacities."). To the extent Plaintiff is reasserting his *Monell* claims against Lazaga or any other individual defendant, the Court dismisses these claims for the same reasons stated in its prior Order.

### 3. Allegations Against the City

#### a. Practice, Custom or Policy (Claim 7)

In Claim 7 of the SAC, Plaintiff alleges that the City, through the SDPD, maintains a "de facto policy, custom and/or practice of harassing, intimidating, citing and threatening to arrest" individuals who are exercising their First Amendment rights or are African American. SAC ¶ 111. Plaintiff further alleges that this policy was the moving force behind the violation of his own constitutional rights. *Id.* Defendants argue Plaintiff has failed to plead a persistent or widespread policy of unconstitutional conduct. ECF Nos. 25-1 at 15–17; 31 at 7.

///

"An unconstitutional policy need not be formal or written to create municipal liability under Section 1983; however, it must be 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Gordon*, 6 F.4th at 974 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Here, Plaintiff alleges that at least four other separate incidents have occurred in which members of the SDPD's bike team have used excessive force against African American individuals. SAC ¶¶ 122–23, 125, 129. Plaintiff identifies incidents on November 19, 2023 and January 3, 2024 captured in short video clips. *Id.* ¶¶ 138–39. In the November 19, 2023 incident, SDPD officers from the Bike Team allegedly responded to a situation involving a White and Black individual, but arrested the Black individual only. *Id.* ¶ 122. The January 3, 2024 video allegedly shows a SDPD Bike Team officer violently punching a Black individual that was already restrained. *Id.* ¶ 123. Plaintiff also cites a news report and video published on August 19, 2024, where a SDPD Bike Team officer allegedly forcefully pushed a compliant Black individual to the ground. *Id.* ¶ 125. Finally, Plaintiff points to a lawsuit filed in this District—*Lee v. City of San Diego et al*, 3:18-cv-00159-W-BLM—involving an altercation between SDPD police officers and another African American individual. *Id.* ¶ 129. According to Plaintiff, in *Lee*, the City was held liable for this individual's injuries. *Id.*

Plaintiff additionally cites four studies in support of his *Monell* claim: (1) a 2016 study conducted by San Diego State University, commissioned by the City of San Diego; (2) a 2019 NBC San Diego report; (3) a report from the Police Scorecard, a nationwide public evaluation of policing in the United States; and (4) a 2021 report conducted by the Center for Policing Equity, commissioned by the SDPD. *Id.* ¶¶ 34–42. The 2021 report is particularly relevant here. According to the Center for Policing Equity report, African American individuals experienced non-traffic stops 4.2 times as often as white people,

were subjected to force 4.8 times as often, and accounted for 22.3% of persons who experienced use of force in San Diego despite comprising only 6.1% of the population. *Id.* ¶¶ 40–42; *see Russell v. City of San Diego*, No. 24CV0527-GPC(SBC), 2025 WL 297034, at \*5 (S.D. Cal. Jan. 24, 2025) (holding Plaintiff had plausibly alleged a *Monell* claim partly considering Center for Policing Equity report). Plaintiff alleges that despite these incidents, Defendants have failed to adequately supervise, discipline or correct the officers involved in these incidents. *Id.* ¶¶ 155, 162.

In response, Defendants argue that the video clips and news reports relied upon by Plaintiff are brief and lack context, leaving it unclear whether the force used by SDPD officers in those instances was excessive. ECF No. 25-1 at 17. Even if that were the case, the incidents described involve multiple specific instances in which SDPD officers used force against African American individuals in a manner that could plausibly be considered excessive. Whether these prior incidents involved force ultimately determined to be excessive is not determinative at this early stage as to whether Plaintiff has alleged a plausible *Monell* claim. *See Wright v. Cnty. of San Bernardino*, No. 5:24-CV-01123-JLS-JC, 2025 WL 546362, at \*4 (C.D. Cal. Jan. 14, 2025) (holding a *Monell* claim was properly pleaded even though "none of the factual circumstances" in prior incidents "perfectly match[ed]" the circumstances alleged); *Estate of Osuna v. Cnty. of Stanislaus*, 392 F. Supp. 3d 1162, 1173 (E.D. Cal. 2019) ("Whether these previous cases are all manifestations of the same policy or custom, and whether that policy or custom was the moving force behind the injury to decedent in this case, are factual issues to be determined following the discovery phase of this litigation."); *J.M. by & Through Rodriguez v. Cnty. of Stanislaus*, No. 1:18-CV-01034-LJO-SAB, 2018 WL 5879725, at \*6 (E.D. Cal. Nov. 7, 2018) ("Whether the prior incidents did involve misuses of force and establish that alleged custom, policy, or practice exists is a question of fact, and Plaintiffs have offered enough detail to plausibly state a claim at this stage in the proceedings.").

For these reasons, the Court **DENIES** Defendants' motion to dismiss Claim 7, insofar as the Plaintiff's allegations are based on the City's maintenance of a custom,

practice, or policy of discriminatory conduct directed toward African Americans, which Plaintiff alleges was the moving force behind the violation of his constitutional rights.

### b.    Failure to Train (Claim 8)

In Claim 8 of the SAC, Plaintiff alleges that the City, through the SDPD, failed to properly train its officers "on the dangers of kneeling on a prone, compliant individual's back and piling onto compliant individuals." SAC ¶ 143. These allegations are identical to the failure to train claim pleaded in Plaintiff's FAC. FAC ¶ 96. In its prior order on Defendants' motion to dismiss Plaintiff's FAC, the Court dismissed Plaintiff's failure to train claim, holding Plaintiff had failed to adequately allege a pattern of similar constitutional violations. ECF No. 16 at 15. The allegations in Plaintiff's SAC are deficient for the same reasons. *See Connick v. Thompson,* 563 U.S. 51, 63 (2011) ("[B]ecause those incidents are not similar to the violation at issue here, they could not have put [the District Attorney] on notice that specific training was necessary to avoid this constitutional violation."); *City of Canton v. Harris*, 489 U.S. 378, 391 (1989) ("[F]or liability to attach in this circumstance the identified deficiency in a city's training program must be *closely related* to the ultimate injury."); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("Prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question. That is, notice of a pattern of *similar* violations is required.").

Plaintiff argues Defendants have improperly emphasized the allegations pertaining solely to kneeling. ECF No. 27 at 19. Nevertheless, this is how Plaintiff framed his failure to train claim in the SAC. *See* SAC ¶ 143 ("[Plaintiff] alleges that the City of San Diego, through the SDPD, failed to properly train its officers in key constitutional protections, including those related to excessive force and unlawful detentions and arrests. *Specifically*, the failure to train officers on the dangers of kneeling on a prone, compliant individuals back and piling onto compliant individuals . . . ."); 145 ("Defendant City's decision not to train its officers about their constitutional limits in using force and *kneeling on compliant persons* in effectuating arrests . . . ."). It is well established that a "[p]laintiff's allegations

and theories of liability are confined to those found in the operative complaint." *Hayward Prop., LLC v. Commonwealth Land Title Ins. Co.,* No. 17-CV-06177 SBA, 2021 WL 4503457, at *6 (N.D. Cal. Sept. 30, 2021). For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 8.

### c.    Failure to Supervise or Discipline (Claims 9 and 10)

In Claim 9 of the SAC, Plaintiff alleges that the City maintains a de facto policy of insufficiently supervising its officers with respect to racial profiling and the use of excessive force. SAC ¶ 153. Similarly, in Claim 10 of the SAC, Plaintiff alleges that the City has a de facto policy of failing to adequately discipline or correct its police officers with respect to racial profiling, unlawful detentions, and the use of excessive force. *Id.* ¶ 161. Defendants move to dismiss Claims 9 and 10 as conclusory. ECF No. 25-1 at 19–20.

"A plaintiff may establish municipal liability if it can prove that a municipality's omissions, such as a failure to supervise and discipline, render it responsible for a constitutional violation even though the municipality's policies are facially constitutional." *Gonzalez v. Alva*, No. 11-CV-2846 W WVG, 2013 WL 3795691, at *6 (S.D. Cal. July 19, 2013). "In order to do so, a plaintiff must show that (1) the municipality's deliberate indifference to citizens' constitutional rights led to its failure to supervise or discipline, and (2) the failure to supervise or discipline caused a municipal employee to commit the constitutional violation the plaintiff suffered." *Id.*; *see Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("[A] failure to supervise that is sufficiently inadequate may amount to deliberate indifference.") (internal quotation marks omitted).

As explained above, Plaintiff has plausibly alleged the City maintains an unconstitutional custom, practice or policy of discriminatory conduct directed towards African Americans. For the same reasons, the Court **DENIES** Defendants' motion to dismiss Claims 9 and 10 for failure to supervise or discipline  officers with respect to racial discrimination directed to African Americans under *Monell*. *See Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) ("[A] custom or practice can be inferred

from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.").

## C.    State Law Claims

The SAC asserts four state law claims against the City and Officer Defendants: intentional infliction of emotional distress, assault, battery, and violation of California Civil Code § 52.1. SAC ¶¶ 172–94. Defendants argue that because Plaintiff has failed to allege any plausible constitutional claims against Lazaga, Plaintiff's state law claims against Lazaga must also fail. ECF No. 25-1 at 20–21.

### 1.    *Assault, Battery, and Intentional Infliction of Emotional Distress (Claims 11, 12, 13)*

Defendants move to dismiss Plaintiff's state law claims for assault, battery, and intentional infliction of emotional distress against defendant Lazaga, arguing that even assuming Lazaga was the individual that pulled Plaintiff across the patrol vehicle, this act would not support these claims. ECF No. 31 at 3.

The Court does not agree. Here, Plaintiff's state law claims for assault, battery, and intentional infliction of emotional distress against defendant Lazaga implicate the same legal standards as his § 1983 excessive force claim. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 487 n.17 (9th Cir. 2007) (reversing district court's grant of summary judgment on intentional infliction of emotional distress claim where plaintiff alleged officers' use of force was excessive); *Manlove v. Cnty. of San Diego,* No. 3:24-CV-0801-CAB-MMP, 2025 WL 1346872, at *5 (S.D. Cal. May 8, 2025) ("Under California law, claims for assault and battery against police officers are resolved under the same liability standard as 42 U.S.C. § 1983 excessive force causes of action."); *Gonzalez v. City of Tustin*, No. 8:23-CV-01274-FWS-ADS, 2023 WL 9689159, at *13 (C.D. Cal. Dec. 28, 2023) (holding plaintiff had plausibly alleged an intentional infliction of emotional distress claim based on the same allegations supporting a plausible excessive force claim); *Penny v. City of Los Anegles*, No. CV207211DMGMAAX, 2022 WL 2069132, at *13 (C.D. Cal. May 9, 2022) ("[Plaintiff's] intentional tort claims under California law involve the same

standards as that of an excessive use of force claim under the Fourth Amendment."), *aff'd and remanded sub nom. Penny v. Azmy*, No. 22-55572, 2024 WL 489287 (9th Cir. Feb. 8, 2024); *Villa v. Cnty. of San Diego*, No. 20-CV-537-CAB-NLS, 2020 WL 3100045, at *5 (S.D. Cal. June 11, 2020) ("Plaintiff has adequately alleged a plausible excessive force claim, and therefore has sufficiently alleged a claim for . . . intentional infliction of emotional distress[.]").

As Plaintiff has plausibly pleaded a § 1983 excessive force claim against defendant Lazaga, the Court also **DENIES** Defendants' motion to dismiss plaintiff's assault, battery, and intentional infliction of emotional distress claims against Lazaga.

### 2. *Bane Act (Claim 10)*

Defendants finally move to dismiss Plaintiff's Bane Act claim against defendant Lazaga, contending Plaintiff has not sufficiently pleaded that Lazaga acted with the specific intent to violate Plaintiff's right to be free from excessive force. ECF No. 31 at 4.

In excessive force cases, the Bane Act "does not require proof of coercion beyond that inherent in the underlying violation." *Rodriguez v. Cnty. of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018); *Russell*, 2024 WL 3049853, at *8 ("Because Plaintiff alleges an excessive force claim, he does not need to allege an independent threat, intimidation or coercion separate from the threat, intimidation, or coercion inherent in an excessive force claim."); *Young v. Cnty. of San Diego*, No. 20-CV-02441-H-AHG, 2021 WL 1087102, at *7 (S.D. Cal. Mar. 22, 2021) ("Plaintiff need not allege any facts of independent threats, intimidation, or coercion beyond his excessive force claim."); *McAdams v. City of Newport Beach*, No. SACV1900615AGKESX, 2019 WL 6736919, at *2 (C.D. Cal. Oct. 2, 2019) ("[W]here the underlying constitutional violation is excessive force instead of, for example, unlawful arrest, the plaintiff need not allege a separate and distinct act of threat, intimidation, or coercion to succeed on a Bane Act claim.").

Here, Plaintiff alleges he was already handcuffed and had complied with an instruction to enter a patrol vehicle through an open door. *Id.* ¶ 82. It was only after Plaintiff was seated when one of the officers—believed to be defendant Lazaga—opened the

opposite car door, yelled, and then grabbed and forcibly dragged Plaintiff by his cuffed wrists to the other end of the patrol car. *Id.* ¶ 84. These allegations are sufficient to plausibly infer Lazaga acted with specific intent. *See Est. of Gutierrez by & through Benitez v. Castillo*, No. 21-CV-01292-H-LL, 2021 WL 5989972, at *8 (S.D. Cal. Dec. 17, 2021) (denying motion to dismiss Bane Act claim where plaintiff had alleged sufficient facts to support that the amount of force used by defendant could be considered "more than necessary under the circumstances"); *McAdams v. City of Newport Beach*, No. SACV1900615AGKESX, 2019 WL 6736919, at *3 (C.D. Cal. Oct. 2, 2019) ("Plaintiff alleges sufficient factual detail about the circumstances surrounding the alleged use of excessive force to plausibly infer the Officers acted with specific intent."). For these reasons, the Court **DENIES** Plaintiff's motion to dismiss Claim 10.

### D. Request for Extension of Time to Effect Service on Doe Defendants

On March 4, 2025, the Court ordered Plaintiff to show cause why the Doe defendants should not be dismissed for failure to effect service under Federal Rule of Civil Procedure 4(m). ECF No. 16 at 17–18.

Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The 90-day deadline under Rule 4(m) applies to Doe defendants. *See Williams v. Cnty. of Los Angeles*, No. 23-55155, 2024 WL 2862587, at *1 (9th Cir. June 6, 2024); *Jackson v. McMahon*, No. EDCV190548SBPVC, 2021 WL 3208029, at *2 (C.D. Cal. July 29, 2021) ("The 90-day service deadline under Rule 4(m) applies to Doe Defendants.").

Here, the Court finds good cause to extend the service deadline under Rule 4(m). Plaintiff represents it made an informal discovery request to Defendants seeking the body worn camera footage from the incident giving rise to this litigation to identify the Doe defendants. ECF No. 24 at 2–3. Although Plaintiff did not obtain this footage, Plaintiff

states he nevertheless was able to identify the Doe Defendants through "alternative means." *Id.* at 4. Under the circumstances, the Court does not conclude Plaintiff was choosing not to complete service "out of choice." *Mejia Banegas v. Doe #2*, No. 18-CV-02670-GPC-JLB, 2019 WL 1353712, at *3 (S.D. Cal. Mar. 26, 2019) (recommending that plaintiff be granted an extension of time to serve Doe defendants), *report and recommendation adopted sub nom. Banegas v. Doe #1*, No. 18CV2670-GPB(RBM), 2019 WL 4187626 (S.D. Cal. Sept. 4, 2019). For these reasons, and considering the early stage of the proceedings, the Court **GRANTS** Plaintiff's request for an extension of time to serve the Doe defendants.

### E.    Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the "liberality in granting leave to amend is subject to several limitations." Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotation marks omitted). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989). Here, the Court already provided Plaintiff an opportunity to amend his pleading. As Plaintiff has not been able to cure the deficiencies previously identified in the Court's prior Order, the Court finds further amendment would be futile. *See* Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (holding plaintiff's failure to correct deficiencies in its second amended complaint was a "strong indication" that plaintiff had "no additional facts to plead.") (internal quotation marks omitted).

*///*

*///*

*///*

*///*

*///*

*///*

## IV.    CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion as follows:

### A.    Individual § 1983 Claims against the Officer Defendants

1.    The Court **DENIES** Defendants' motion to dismiss Claims 1 and 2 against the Officer Defendants.

2.    The Court **GRANTS** Defendants' motion to dismiss Claim 6 against the Officer Defendants without leave to amend.

### B.    Individual § 1983 Claims against the Defendant Lazaga

3.    The Court **GRANTS** Defendants' motion to dismiss Claims 1-4 against defendant Lazaga without leave to amend.

4.    The Court **DENIES** Defendants' motion to dismiss Claim 5 against defendant Lazaga.

### C.    *Monell* Claims

5.    To the extent Plaintiff is asserting a *Monell* claim against any of the Officer Defendants, the Court **DISMISSES** these claims without leave to amend.

6.    The Court **DENIES** Defendants' motion to dismiss Claims 7 and 9-10 against the City.

7.    The Court **GRANTS** Defendants' motion to dismiss Claim 8 against the City without leave to amend.

### D.    State Law Claims

8.    The Court **DENIES** Defendants' motion to dismiss Claims 11-14 against defendant Lazaga

### E.    Request for Extension of Time

9.    The Court **GRANTS** Plaintiff's request for an extension of time to serve the Doe Officer Defendants. Plaintiff is **GRANTED** leave to amend solely to amend the SAC to substitute named Defendants for any parties previously identified as Doe defendants. If

Plaintiff wishes to do so, he must file a Third Amended Complaint with an appropriate redline by **June 23, 2025**.

10.    Plaintiff shall subsequently effectuate service on the Parties previously identified as Doe defendants by **June 30, 2025**.

**IT IS SO ORDERED.**

Dated: June 13, 2025

_____
Hon. Robert S. Huie
United States District Judge