1  **GENEVIÉVE L. JONES-WRIGHT, Esq., LL.M.** (SBN 235168)
2  6549 Mission Gorge Road, Suite 379
   San Diego, CA 92120
3  Telephone: 619.736.0179
   Email: JonesWrightEsq@gmail.com
4  **ROBERT SCOTT DREHER, ESQ.** (SBN 120527)
5  Dreher Law Firm
   350 West Ash Street, Suite 101
6  San Diego, CA 92101
   Email: Scott@DreherLawFirm.com
7

8  **Attorneys For Plaintiff**
   Muslah Abdul-Hafeez
9

10          **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  MUSLAH ABDUL-HAFEEZ,          CASE NO.: 24-cv-1184-RSH-MMP

14          PLAINTIFF,            **THIRD AMENDED COMPLAINT**
                                   **FOR DAMAGES**
15       v.

16  CITY OF SAN DIEGO, DOMINIC     1.  42 U.S.C. § 1983 (First Amend.)
17  LAZAGA, O'LEARY RAMOS,         2.  42 U.S.C. § 1983 (Fourteenth
    ROBERT TROUSAS, GARRETT            Am.)
18  KAIN, MATTHEW FREUND, and     3.  42 U.S.C. § 1983 (Fourth Amend.)
19  CARLOS DOE.                    4.  42 U.S.C. § 1983 (Fourth Amend.)
                                    5.  42 U.S.C. § 1983 (Fourth Amend.)
20          DEFENDANTS.            6.  42 U.S.C. § 1983 (*Monell*)
21                                     (Unconstitutional Policy/Custom)
                                    7.   42 U.S.C. § 1983 (*Monell*)
22                                     (Failure to Supervise)
23                                  8.   42 U.S.C. § 1983 (*Monell*)
                                       (Failure to Discipline Or Correct)
24                                  9.   Intentional Infliction Of Emotional
25                                     Distress
                                    10. Assault
26                                  11. Battery
27                                  12. California Civil Code § 52.1 (Civil
                                       Rights Violations)
28

-1-

**DEMAND FOR JURY TRIAL**

Judge: Hon. Robert S. Huie
Courtroom: 3B
Trial: Not Set

**PLAINTIFF  MUSLAH  ABDUL-HAFEEZ  ALLEGES  THE FOLLOWING**: This is a complaint for damages based upon federal civil rights and state constitutional rights violations committed by Defendant City of San Diego (hereinafter "City"), Officers DOMINIC LAZAGA, O'LEARY RAMOS, ROBERT TROUSAS, GARRETT KAIN, MATTHEW FREUND, and CARLOS DOE[1] and other respective officials, uniformed peace officers, employees, and/or agents of the San Diego Police Department (hereinafter "SDPD").

## I.  <u>JURISDICTION</u>

1. Plaintiff brings this case pursuant to 42 U.S.C. §§ 1983, 1988 and California state law. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343(a) (1-4). Supplemental jurisdiction exists over the state claims and Defendants pursuant to 28 U.S.C. § 1367(a).

## II.  <u>VENUE</u>

2. The claims alleged herein arose from events or omissions that occurred in the city of San Diego. Therefore, venue lies in the Southern District of California pursuant to 28 U.S.C. § 1391(b)(2).

---

[1] Plaintiff believes he will be able to fully identify this officer.

//

### III.  <u>PARTIES</u>

*Plaintiff*

3.  Plaintiff MUSLAH ABDUL-HAFEEZ ("Mr. Abdul-Hafeez") was a resident and private citizen of the State of California at all times material to this Complaint.

*Defendants*

4.  Plaintiff is informed, believes, and thereupon alleges that Defendants DOMINIC LAZAGA ("Defendant Lazaga"), O'LEARY RAMOS ("Defendant Ramos"), ROBERT TROUSAS ("Defendant Trousas"), GARRETT KAIN ("Defendant Kain"), MATTHEW FREUND ("Defendant Freund"), and CARLOS DOE ("Defendant Carlos Doe") was at all times material herein acting under color of law within the course and scope of their employment as a police officer with the San Diego Police Department ("SDPD"). They are being sued individually and in their official capacities.

5.  Plaintiff is informed, believes, and thereupon alleges that Defendant CITY OF SAN DIEGO ("Defendant City") is a duly constituted governmental entity in the State of California, and is, or was, the employer of all individually named Defendants including, but not limited to, those who are sued in their individual and official capacities. The full identity (last name)

of Defendant Carlos Doe is unknown to Plaintiff, however the capacity and/or nature of his involvement is presently known to Plaintiff. Plaintiff therefore sues such person using "Doe" as a fictitiously-named defendant who is being sued individually and in his official capacity. Plaintiff is informed, believes, and thereupon alleges that there is likely to be evidentiary support to identify Defendant Doe's true last name.

6. All of the facts, acts, omissions, events, and circumstances herein mentioned and described occurred in the City of San Diego, State of California, and the corporate and/or entity Defendants, and each of them, are residents of the City of San Diego, State of California, and/or have their principal place of business in said city and state, and/or are doing business in said city and state. Each of the individually named Defendants are employed by Defendant City within the city of San Diego.

7. Plaintiff is informed, believes, and thereupon alleges that all Defendants employed by Defendant City were, at all times relevant and material to this Complaint, acting within the course and scope of their employment duties for Defendant City, and under color of law. Plaintiff is informed, believes, and thereupon alleges that each of the individual Defendants' acts were known to, discovered by, approved by, and/or ratified by Defendant City, by and through its policy makers, decision makers, officials, officers, and/or supervisors, including applicable Doe Defendants.

THIRD AMENDED COMPLAINT                24-cv-1184-RSH-MMP

8. Plaintiff is informed, believes, and thereupon alleges that all Defendants employed by Defendant City, at all times relevant and material to this Complaint, were acting within the course and scope of their employment duties under color of law. Plaintiff is informed, believes, and thereupon alleges that each of the individual Defendants' acts were known to, discovered by, approved by, and/or ratified by Doe Defendants, by and through policy makers, decision makers, and/or supervisors, including applicable Doe Defendants.

9. Plaintiff is informed, believes, and thereupon alleges that officials, supervisors, policy makers, and other individuals with the authority to set or modify municipal and/or departmental policy, de jure or de facto, of Defendant City, and/or Doe Defendants, participated in, approved of, ratified, and/or failed to prevent the acts by all Defendants and Doe Defendants of which Plaintiff complains herein.

10. Plaintiff is informed, believes, and thereupon alleges that at all times herein mentioned, each of the Defendants—including officials, supervisors, watch commanders, and other policy makers from Defendant City and/or Doe Defendants and their agents—was the agent, employee, or co-conspirator of one other, some, or all of their Co-Defendants. Plaintiff is informed, believes, and thereupon alleges that each of the Defendants, acting individually and/or in concert with each other, engaged in a common

THIRD AMENDED COMPLAINT                24-cv-1184-RSH-MMP

plan to wrongfully deprive Plaintiff of his respective rights to privacy, freedom of expression, security in person and effects, freedom from excessive force, freedom from unreasonable searches and seizures, and due process of law, among others described herein. Each and all of the things done by each Defendant against Plaintiff, as mentioned in this entire Complaint, were done, partially if not entirely, because of Plaintiff's expressive conduct and/or his race. In doing each and all of the things herein mentioned, or neglecting or intentionally failing to rectify said misconduct, each and all Defendants were acting pursuant to a de facto policy and within the scope of such agency, employment, and conspiracy and with full permission, knowledge, approval, ratification, and support of each other.

11. The individual defendants, including the individual Doe defendant, carried out the actions complained of in their individual capacities, under color of state law, in the course and scope of their employment with the San Diego Police Department. Defendant City is, therefore, obligated under California Government Code §§ 815.2 and 825(a) to pay any compensatory damages awarded against the individual defendants. Nevertheless, the defendants herein are jointly and severally liable for any damages award.

//

//

## IV. <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

*The incident*

12. On or about July 9, 2023, at or near the parking lot of Chase Bank located between E and F Streets on 7th Street, DEFENDANTS LAZAGA, RAMOS, TROUSAS, KAIN, FREUND, and CARLOS DOE and each of them, detained Mr. Abdul-Hafeez without reasonable suspicion, probable cause or other basis in law. Mr. Abdul-Hafeez was ultimately arrested and held for hours in handcuffs in a police vehicle and given a citation for violation of PC 148(a)(1).

13. Mr. Abdul-Hafeez, an African-American man, is known to SDPD officers generally, and particularly its bike team, as he engages in his cop watch duties in the downtown area of San Diego routinely.

14. Mr. Abdul-Hafeez engages in cop watch duties most Saturday nights in the downtown area of the city of San Diego; because of which he encountered members of SDPD's Bike Team ("Bike Team") on many occasions before the incident at bar.

15. Most of the officers involved in Mr. Abdul-Hafeez's unlawful search and seizure and attendant abuse on the date in question were members of the Bike Team. Upon information and belief, all but two of the Defendant Officers present at the scene of Mr. Mr. Abdul-Hafeez's unlawful arrest are members of the Bike Team.

16. Mr. Abdul-Hafeez has engaged with several of the Defendant Officers although he cannot identify them by name independently.

17. Office Lazaga is a member of the Bike Team.

18. Mr. Abdul-Hafeez is informed, believes, and thereupon alleges that the same officers involved in the incident subject of this litigation were involved in other incidents filmed by Mr. Abdul-Hafeez.

19. Mr. Abdul-Hafeez is informed, believes, and thereupon alleges that these same officers were aware on July 9, 2023 that Mr. Abdul-Hafeez was engaging in cop watch activities because of his repeated on-scene filming of them on various, prior occasions.

20. Mr. Abdul-Hafeez is informed, believes, and thereupon alleges that these same officers were aware on July 9, 2023 that Mr. Abdul-Hafeez was engaging in cop watch activities because he routinely carries out his duties in their "beat" making him a known person to them.

21. Mr. Abdul-Hafeez is informed, believes, and thereupon alleges that these same officers were aware on July 9, 2023 that Mr. Abdul-Hafeez had also engaged in protests against them and their conduct at their station located at 2501 Imperial Avenue in the city of San Diego.

22. While performing his cop watch duties, Mr. Abdul-Hafeez has frequently offered assistance—such as helping individuals move their vehicles—to

persons being detained by Defendant Officers. This conduct has drawn the attention of the Defendant Officers to Mr. Abdul-Hafeez.

23. Defendant Kain knew Mr. Abdul-Hafeez and recognized him from previous encounters on the night of Mr. Abdul-Hafeez's false arrest.

24. Upon hearing gunshots, Mr. Abdul-Hafeez went to his car to retrieve his phone to film the officers who responded to the area. His phone was charging in his vehicle. After retrieving his phone, Mr. Abdul-Hafeez turned around out of his vehicle and an unidentified officer from the bike team pulled out his gun, pointed it at Mr. Abdul-Hafeez, and ordered him to get on the ground and to put his hands out to his side.

25. Mr. Abdul-Hafeez, who was wearing his neon green cop watch vest which reads "SESD 4TH DISTRICT FIRST RESPONSE TEAM COPWATCH ACCOUNTABILITY UNIT" at the time, immediately complied with the orders given and laid on the ground with his hands to his side.

26. Nevertheless, several officers—including the officer who gave the orders with his gun drawn—immediately jumped on and piled onto Mr. Abdul-Hafeez.

27. While lying prone on the ground, and while multiple officers were on top of him, the officers began to forcefully hit Mr. Abdul-Hafeez and dug into his skin with their nails.

//

THIRD AMENDED COMPLAINT                    24-cv-1184-RSH-MMP

28. Upon information and belief, an officer even kneeled on Mr. Abdul-Hafeez while he lay prone on the ground.

29. After being handcuffed and remaining compliant in a prone position, Mr. Abdul-Hafeez suffered even more abuse at the hands of Officers RAMOS, TROUSAS, LAZAGA, and CARLOS DOE. The officers pulled at his shoulders in a manner that felt like they were trying to "pull his shoulders apart." They used excessive force and painfully contorted and applied pressure to his arms, shoulders, neck, and back. They also inflicted extreme pain on him by tightly handcuffing his wrists leaving marks and dragging him by his arms to another location.

30. The officers inflicted great bodily injury on Mr. Abdul-Hafeez which resulted in a fractured shoulder and back and wrist injuries.

31. At no time, did any of the Defendants intervene to stop the beating of a compliant Mr. Abdul-Hafeez.

32. Defendant Officers also conducted a search of Plaintiff's person and articles of clothing.

33. Subsequent to his unlawful arrest, Mr. Abdul-Hafeez was detained for hours and was given a citation in hopes that he would be prosecuted for one misdemeanor count of California Penal Code section 148(a)(1).

34. No formal charges were levied against Mr. Abdul-Hafeez.

*SDPD's Customs, Policies, and Practices*

35. In 2016, San Diego State University conducted a study on the policies, practices and customs of SDPD. The study, commissioned by the City of San Diego, revealed that Black individuals were disproportionately subjected to searches and questioning after being stopped by SDPD officers. This systemic behavior likely contributed to the unlawful stop and treatment of Plaintiff.[2]

36. In 2019, NBC San Diego reported that, based on data from the San Diego City Attorney's office, Black individuals were five times more likely to face prosecution for minor drug offenses, reinforcing the pattern of racial disparities that permeate how SDPD enforces our laws.[3]

37. The Police Scorecard, which evaluates the policing practices of law enforcement agencies nationwide, considers factors such as police

---

[2] Scott Chanin, Meghan Welsh,  Georgia Nurge & Stuart Henry, *Traffic Enforcement in San Diego, California: An analysis of SDPD vehicle stops in 2014 and 2015*, San Diego State Univ. (Nov. 2016), https://www.sandiego.gov/sites/default/files/sdpdvehiclestopsfinal.pdf

[3] Jesse Marx, *African Americans Are Much More Likely to Be Prosecuted for Minor Drug Infractions in San Diego Than Whites and Hispanics*, NBC San Diego (Jan. 17, 2020), https://www.nbcsandiego.com/news/local/african-americans-are-much-more-likely-to-be-prosecuted-for-minor-drug-infractions-in-san-diego-than-whites-and-hispanics/2226388/.

violence, accountability, and racial bias. Its analysis of SDPD practices revealed ongoing discriminatory policing based on racial disparities.[4]

38. The Police Scorecard found that SDPD stopped Black individuals at more than double the rate of White people, with a higher likelihood of searches, arrests, and the use of force. Black individuals were stopped 219% more frequently than White individuals, with a total of 35,038 stops in a city of 88,774 Black residents. Most of these stops were officer-initiated rather than in response to civilian calls. This suggests that the racial disparities in traffic stops were driven by officers' discretionary actions, rather than responses to community requests for assistance.[5]

39. In 2021, a report commissioned by SDPD and conducted by the Center for Policing Equity identified racial disparities in SDPD's practices, including police interactions with community members, after analyzing SDPD data on traffic stops, non-traffic stops, and use of force incidents between 2016-2020 and controlling for crime rates, poverty rates and neighborhood demographics.[6]

---

[4] https://policescorecard.org/sandiego
[5] Id.
[6] Jesse Marx, *San Diego Police Finds Racial Disparities in Some Policing Practices*, NBC San Diego (Apr. 12, 2021), https://www.nbcsandiego.com/news/local/san-diego-police-finds-racial-disparities-in-some-policing-practices/2634106/.

40. A key finding from that report shows that Black people experienced non-traffic stops 4.2 times as often as white people.[7]

41. Another key finding from that report shows that Black people comprise 6.1% of the estimated residential population served by SDPD, but accounted for 22.6% of persons who experienced non-traffic stops.[8]

42. Another key finding from that report shows that, after accounting for crime, poverty and racial demographic, Black people were subjected to force, 4.8 times as often per resident as were white people.[9]

43. Another key finding reveals that Black people comprise 6.1% of the estimated residential population served by SDPD, but accounted for 22.3% of persons who experienced use of force.[10]

44. Given the above facts, Mr. Abdul-Hafeez's experience appears to be in keeping with SDPD's documented discriminatory and racially-biased patterns and practices.

## V. DAMAGES

45. Each of the aforementioned acts by each Defendant directly and proximately caused Mr. Abdul-Hafeez to suffer the following: violation of civil rights, loss of freedom of expression, loss of enjoyment of freedom of expression, loss of privacy, loss of enjoyment of privacy, loss of personal

---

[7] Id.
[8] Id.
[9] Id.
[10] Id.

liberty and freedom to physically move about, loss of enjoyment of personal liberty and freedom to physically move about, humiliation, emotional and physical injury, pain and suffering, and great and extreme mental anguish.

46. Mr. Abdul-Hafeez endures, and continues to endure, substantial pain and mental suffering due to each and every act and omission of all Defendants, and each of them.

## VI.  CLAIMS FOR RELIEF

### A. FIRST CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### First Amendment (Free Speech)

### Against Officers Ramos, Trousas, Kain, Freund, And Carlos Doe

47. Plaintiff incorporates all paragraphs, as though fully set forth herein, and realleges all prior and subsequent paragraphs of this complaint and incorporates the same by reference, with emphasis on Paragraphs 15-23 .

48. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to him by the First Amendment to the United States Constitution.

49. 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or

the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

50. The First Amendment guarantees Mr. Abdul-Hafeez's freedom of speech and expression permitting Mr. Abdul-Hafeez to, inter alia, freely and lawfully express opinions or ideas. This expression may be accomplished verbally, demonstratively, and/or symbolically.

51. Mr. Abdul-Hafeez believes, and thereupon alleges, that he was one of only three individuals arrested during the relevant time period. While the two others were ostensibly believed to be involved in the shooting incident that prompted the officers' response, Mr. Abdul-Hafeez was the only individual on the scene who was actively filming the officers, leading to his arrest[11].

52. To Mr. Abdul-Hafeez's knowledge, the other two males who were arrested had not ever protested the officers or engaged in cop watch activities prior to the incident at bar.

53. To Mr. Abdul-Hafeez's knowledge, no other person on the scene was cop watching.

---

[11] Plaintiff believes upon information that both of the other arrestees were "let go" eventually as he was. One person was purportedly found to actually be a victim of the shooting.

54. Plaintiff asserts that his arrest was a direct result of his cop-watching activities and past protests of these officers, rather than any legitimate involvement in the underlying incident.

55.  Mr. Abdul-Hafeez is informed and believes, and on that basis alleges, that these officers were aware of his First Amendment activities and held a negative view of him because of those activities. This is evidenced by the ongoing harassment of Mr. Abdul-Hafeez by SDPD Officers to this day.

56. All of the acts complained of herein were retaliatory and directed toward Mr. Abdul-Hafeez because of his cop watch activities, which entails observing the conduct of officers. The Officers chilled and deterred such expression by undertaking the conduct complained of herein.

57. Acting with malice and oppression, the Officers acted deliberately to intimidate, punish, and silence Mr. Abdul-Hafeez.

## B. SECOND CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### Fourteenth Amendment

### (Equal Protection Under the Law)

### Officers Ramos, Trousas, Kain, Freund, And Carlos Doe

58. Plaintiff incorporates all paragraphs, as though fully set forth herein, and realleges all prior and subsequent paragraphs of this complaint and incorporates the same by reference.

59. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to him by the Fourteenth Amendment to the United States Constitution.

60. The Fourteenth Amendment guarantees Plaintiff equal protection under the law.

61. The Equal Protection Clause ensures that all individuals are afforded the same protection under the law, prohibiting discriminatory practices by the government. Racial profiling, whereby law enforcement targets individuals for stops, searches, or arrests based on race, denies people of color the equal protection guaranteed by the Constitution, as it subjects them to different and arbitrary enforcement of the law.

62. Plaintiff has a constitutionally protected liberty interest in personal bodily integrity and freedom from physical abuse, which was violated when Defendant Officers used excessive and unlawful force by physically accosting and abusing Plaintiff during his unlawful arrest, causing pain and injury–consistent with the well-documented disparate treatment of Black persons in the city of San Diego.

63. Mr. Abdul-Hafeez believes there were approximately 20-30 individuals in the direct vicinity where the incident at bar occurred.

64. Mr. Abdul-Hafeez is informed and believes, and on that basis alleges, that the area in which his unlawful seizure and first round of abuses occurred spanned only about a 10-yard radius.

65. Mr. Abdul-Hafeez is informed and believes, and thereupon alleges, the crowd of people in the area was made up of different races.

66. Although the crowd consisted of individuals from various racial backgrounds, Mr. Abdul-Hafeez is informed and believes, and on that basis alleges, that only Black individuals were arrested during the relevant time period.

67. Despite standing in the same general area and engaging in the same or similar conduct as non-Black individuals, Plaintiff was one of only three individuals arrested—all of whom were Black.

68. Upon information and belief, the officers ignored and did not question the non-Black bystanders who were standing equally close to the scene watching the unfolding of events.

69. The Defendant Officers' treatment of Mr. Abdul-Hafeez aligns with the findings of SDPD's own 2021 Center for Policing Equity report that

- Black individuals were 4.2 times more likely to experience *non-traffic* stops than white individuals;

- 22.3% of persons subjected to force were Black, despite Black people making up only 6.1% of the residential population;

- Black individuals were subjected to force 4.8 times more often per capita than white individuals, even after accounting for crime and neighborhood demographics.

70. The Defendant Officers' treatment of Mr. Abdul-Hafeez aligns with the findings of the 2016 study conducted by San Diego State University, commissioned by the City of San Diego, that Black individuals were disproportionately subjected to searches compared to their white counterparts although they were less likely to be found with contraband when compared to their white counterparts.

71. Plaintiff's experience of excessive force and the unlawful search and seizure of his person at the hands of the Defendant Officers is consistent with SDPD's documented pattern of racially biased use of force and policing in general, which amounts to racial profiling. Such gross abuse of official power constitutes a violation of Plaintiff's equal protection rights under the Fourteenth Amendment.

## C.  **THIRD CLAIM FOR RELIEF**

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### Fourth Amendment (Unlawful Seizure/Arrest)

### Officers Ramos, Trousas, Kain, Freund, And Carlos Doe

72. Plaintiff incorporates all paragraphs, as though fully set forth herein, and realleges all prior and subsequent paragraphs of this complaint and incorporates the same by reference.

73. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to him by the Fourth Amendment to the United States Constitution.

74. The Fourth Amendment protects Plaintiff from unreasonable searches and seizures, which includes the right to be free from the use of excessive force and being racially profiled.

75. The unlawful seizure, detention, and prolonged detention, of Mr. Abdul-Hafeez by the Defendants were without lawful basis, reasonable suspicion, probable cause, or warrant, or any recognized exceptions thereto, or justification or excuse, and were thus unreasonable and in violation of Mr. Abdul-Hafeez's Fourth Amendment rights.

76. Said defendants intentionally and unlawfully exercised force or the express or implied threat of force to restrain, detain, or confine Mr. Abdul-Hafeez. Said defendants, particularly supervisory defendants, to include any applicable Does, authorized, encouraged, directed, or assisted their fellow officers in either doing an unlawful act or procuring without proper process Mr. Abdul-Hafeez's arrest.

77. The restraint, detention, confinement, and arrest caused Mr. Abdul-Hafeez to suffer injury, damage, loss, or harm according to proof at the time of trial.

### D.  <u>FOURTH CLAIM FOR RELIEF</u>

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### Fourth Amendment (Unlawful Search)

### Officers Ramos, Trousas, Kain, Freund, And Carlos Doe

78. Plaintiff incorporates all paragraphs, as though fully set forth herein, and realleges all prior and subsequent paragraphs of this complaint and incorporates the same by reference.

79. The search of Mr. Abdul-Hafeez's body and articles of clothing, upon his unlawful arrest, was without lawful basis, reasonable suspicion, probable cause, or warrant, or any recognized exceptions thereto, or justification or excuse, and was thus unreasonable and in violation of Mr. Abdul-Hafeez's Fourth Amendment right to be free from unreasonable searches.

### E.  <u>FIFTH CLAIM FOR RELIEF</u>

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### Fourth Amendment (Excessive Force)

### Against Officers Lazaga, Ramos, Trousas, Kain, Freund, And Carlos Doe

80. Plaintiff incorporates all paragraphs, as though fully set forth herein, and realleges all prior and subsequent paragraphs of this complaint and incorporates the same by reference.

81. The unlawful, unwanted, and harmful touching of Mr. Abdul-Hafeez by the Defendants, constituting batteries and excessive force, was without lawful basis, reasonable suspicion, probable cause, or warrant, or any recognized exceptions thereto, or justification or excuse, and was thus unreasonable and in violation of Mr. Abdul-Hafeez's Fourth Amendment rights.

82. The unlawful, unwanted, painful and harmful handcuffing and handling of Mr. Abdul-Hafeez by Defendants, including dragging him to and inside of the police vehicle by his arms, also constituting a battery and excessive force, was without lawful basis, reasonable suspicion, probable cause, or warrant, or any recognized exceptions thereto, or justification or excuse, and was thus unreasonable and in violation of Plaintiff's Fourth Amendment rights.

83. Mr. Abdul-Hafeez was taken to the patrol car after being handcuffed. While three officers were present, Mr. Abdul-Hafeez was instructed to get into the patrol car after an officer opened the door. Mr. Abdul-Hafeez, complying with the instructions given in the only way he could, got into the patrol car facing the officers. Mr. Abdul-Hafeez was seated in the back of

the patrol car on his rear end facing Officers Lazaga and Carlos Doe when Officer Kain opened the opposite door of the patrol car. When Officer Kain opened the opposite door, he yelled something then proceeded to grab Mr. Abdul-Hafeez by his cuffed wrists and forcibly dragged him from one end of the back of the patrol car to the other end.

84. Officer Lazaga was one of the three officers present during this incident that took place at the patrol vehicle. Officer Lazaga witnessed the entire interaction.

85. Mr. Abdul-Hafeez distinctly recalls Officer Lazaga being there at the patrol car when this abuse took place and believed that Officer Lazaga may be the person who forcibly dragged him by his cuffed wrists from one side of the patrol car to the other.

86. There was no justification for this mistreatment and abuse of Mr. Abdul-Hafeez.

87. At no time did Officer Lazaga or Defendant Carlos Doe intervene to stop the torture.

88. At no time did Officer Lazaga or Defendant Carlos Doe tell the officer who snatched Plaintiff from one side of the patrol car to the other side not to engage in that type of behavior or to stop.

89. At no time did Officer Lazaga or Defendant Carlos Doe help Mr. Abdul-Hafeez after the abuse.

90. Because of the limited space where this abuse occurred (at a patrol car) and where all three officers were looking on and/or doing the abusing, Officer Lazaga as well as Defendant Carlos Doe all had the time and opportunity to intervene, but did not.

91. Said defendants intentionally and unlawfully exercised excessive force to restrain, detain, and confine Mr. Abdul-Hafeez and/or failed to intervene to stop it.

92. The restraint, detention, confinement, and arrest caused Mr. Abdul-Hafeez to suffer injury, damage, loss, or harm according to proof at the time of trial.

## F. <u>SIXTH CLAIM FOR RELIEF</u>

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### Unconstitutional Policy, Custom, or Procedure (*Monell*)

### Against Defendant City

93. Plaintiff incorporates all paragraphs, as though fully set forth herein, and realleges all prior and subsequent paragraphs of this complaint and incorporates the same by reference.

94. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to him by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

95. Defendants City and Officers violated Mr. Abdul-Hafeez's constitutional rights by creating and maintaining the following unconstitutional customs and practices, inter alia: (i) Mr. Abdul-Hafeez alleges that Defendant City has a de facto policy, custom, and/or practice of harassing, intimidating, citing, and threatening to arrest and arresting persons who (a) exercise their First Amendment rights of freedom of expression and/or (b) are African-American; (ii) Defendant City has policies or customs which caused and were the moving force and/or affirmative link behind some or all of the violations of Mr. Abdul-Hafeez's constitutional rights at issue in this case.

96. Defendants City and Officers maintain a custom, policy, or practice of sanctioning inappropriate and illegal contacts as a result of officers lacking reasonable suspicion or probable cause to make such a contact.

97. Defendants City and Officers maintain a custom, policy, or practice of contacting, detaining, searching and arresting individuals based on unlawful racial profiling.

98. Upon information and belief, one of the Doe Defendants is a sergeant who witnessed the unlawful conduct of other Defendant Officers whom he supervises.

99. Defendant City of San Diego, through its police department (SDPD), maintains an unconstitutional custom, policy, or practice of authorizing or

condoning officers to initiate contacts, detentions, and arrests of individuals without reasonable suspicion or probable cause, in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution.

100.    Independent studies, including the San Diego State University study commissioned by the City of San Diego and SDPD's own commissioned study conducted by the Center for Policing Equity, have consistently demonstrated SDPD's pattern of racial profiling, over-policing, and illegal stops and detentions of Black people in the city of San Diego without probable cause. These studies provide empirical evidence showing that racial bias and unconstitutional practices are deeply ingrained within SDPD's operations.

101.    The findings of these studies reveal that SDPD disproportionately targets African-Americans and other minorities in traffic and non-traffic stops, searches, and arrests, often without reasonable suspicion or probable cause. This pervasive conduct demonstrates a persistent and widespread practice that constitutes a permanent and well-settled policy within the SDPD.

102.    Defendant City has failed to take adequate corrective action in response to the findings from these studies, further demonstrating a deliberate indifference to the rights of minority individuals, including African-Americans, to be free from racial profiling and unlawful seizures.

103.   Mr. Abdul-Hafeez believes and alleges that the facts of the subject incident are not an isolated incident, but rather part of an unoffical policy of SDPD's treatment of Black men, specifically its Bike Team.

104.   SDPD, and specifically its Bike Team, has a longstanding practice and custom of engaging in ultra aggressive behavior that constitutes excessive force, especially as it relates to African-American men, that persists till this day.

105.   SDPD, and specifically its Bike Team, has a longstanding practice and custom of engaging in the racial profiling of African-American men, that persists till this day.

106.   On November 19, 2023, in an incident captured on video, SDPD officers from the Bike Team responded to a situation involving a perceived Black man and a perceived White man, who were about to engage in mutual combat. The video footage shows that the SDPD officers approached the perceived Black man with firearms drawn and forcefully tackled him to the ground, despite him already kneeling with his arms raised in a compliant position. In stark contrast, the officers did not issue any commands to the White man nor did they engage with him in any way. The officers' decision to aggressively arrest the perceived Black man while ignoring the White individual involved in the same incident demonstrates a pattern of racial

profiling and discriminatory policing practices.[12]

107.   In a second video recorded on January 3, 2024, a Bike Team officer violently punches a Black man in the head, even though 3-5 officers are already actively restraining him.[13]

108.   This video clearly shows the excessive force used against the Black individual, who was already under control by multiple officers. The officer's actions are a clear example of unnecessary and disproportionate force, particularly when the individual posed no immediate threat. The decision to use violent force against the Black man, despite him being restrained by other officers, reflects a pattern of excessive force targeting Black individuals.

109.   In another video, an SDPD Bike Team officer is seen pushing a Black man down, causing him to almost strike his head on the concrete. The video shows the man with his hands raised, signaling compliance, yet he was still forcefully pushed to the ground.[14]

110.   Upon information and belief, Defendant Officers are the same officers involved in the three above-referenced incidents.

---

[12] https://youtube.com/shorts/_vjvGx-iNzU
[13] https://youtube.com/shorts/E-jmqEQq1sE
[14]https://www.cbs8.com/article/news/local/polic-clash-with-people-in-gaslamp/509-21449460-bd25-4639-ae8b-f7f846b7f68f (timemark: 0:58)

111.   Upon information and belief, the name of the individual who is lying prone with 3-5 officers on his back is Rodku Smith, a Black man who was not actively resisting the officers at the time the officer was forcefully punching him in the face.

112.   Mr. Smith, under information and belief, was handcuffed and arrested without probable cause.

113.   On May 28, 2017, Michael Lee, a Black man, was downtown simply standing on the sidewalk talking on his cell phone waiting for a friend to pick him up and was approached by two SDPD officers. The officers grabbed Mr. Lee, violently slammed him to the ground, and twisted his arms agressively behind his back, breaking his humerus bone in several places. One officer violently came down with his knee on Mr. Lee's back causing significant pain and injury. The officers also choked and struck Mr. Lee while he was on the ground needlessly. Mr. Lee was also handcuffed and arrested without probable cause. The City was held liable for his injuries and related claims.[15]

114.   Upon information and belief, there are numerous similar cases in recent years that would demonstrate a pattern of SDPD officers using excessive force when effectuating arrests, engaging in unlawful arrests and detentions

---

[15] Case 3:18-cv-00159-W-BLM

THIRD AMENDED COMPLAINT                           24-cv-1184-RSH-MMP

and racial profiling, and kneeling on the backs of prone, compliant individuals.

115.    Upon information and belief, this proof will be obtained during the Discovery phase of the case. Plaintiff believes he has met the requisite pleading requirements to sustain any challenges.

116.    Plaintiff further alleges below that Defendant City's failure to hire, screen, train, and supervise its officers properly, combined with the absence of meaningful disciplinary action for officers who engage in these unconstitutional practices, has encouraged and perpetuated this unlawful custom.

117.    Defendant City has had ample notice of these unconstitutional practices through the aforementioned studies, community advocacy efforts, and numerous complaints, yet has consistently failed to remedy these unlawful practices, resulting in a tacit approval of racially discriminatory policing.

118.    The unconstitutional actions against Plaintiff in this case were carried out pursuant to this long standing custom, policy, or practice, as evidenced by the studies referenced above, which directly resulted in the violation of Plaintiff's constitutional rights, including his rights to be free from unreasonable seizure, unlawful detention, and excessive force.

119.    As a direct and proximate result of Defendant City's unconstitutional customs, policies, or practices, Plaintiff has suffered significant harm,

including physical injuries, emotional distress, and other damages, as set forth in this complaint.

120.    Mr. Abdul-Hafeez is informed, believes, and thereupon alleges that these policies, practices, customs, and procedures are intentional and/or the result of deliberate indifference on the part of Defendants City and Officers, by and through their decision makers.

121.    The foregoing unconstitutional customs and practices were a direct and legal cause of harm to Mr. Abdul-Hafeez.

122.    Mr. Abdul-Hafeez specifically alleges that Defendant City's policies, customs, and/or practices, as described herein, were within the control of said Defendants and within the feasibility of Defendant City, to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Mr. Abdul-Hafeez.

123.    Mr. Abdul-Hafeez alleges that because the practices of unlawfully targeting Black men, like Plaintiff, and using excessive force against them is still occurring, particularly with the Bike Team, there is an unofficial policy that violates the constitutional rights of Black men that has been ratified by SDPD as it is a well-settled custom.

124.    Mr. Abdul-Hafeez alleges the conduct is not a result of isolated or sporadic incidents, rather it is the way SDPD, particularly its Bike Team, carries out policy.

## G.  SEVENTH CLAIM FOR RELIEF

### VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### Failure to Properly Supervise

### Against Defendant City

125.    Plaintiff incorporates all paragraphs, as though fully set forth herein, and realleges all prior and subsequent paragraphs of this complaint and incorporates the same by reference.

126.    The City of San Diego also maintained a de facto policy of insufficient supervision of its officers, particularly in situations involving racial profiling and the use of excessive force. Despite numerous complaints, civil claims, and studies demonstrating unconstitutional actions by SDPD officers, the City failed to establish proper oversight mechanisms. This failure amounts to deliberate indifference, as it allowed officers to repeatedly violate citizens' rights without consequence.

127.    The City's pattern of failing to supervise officers involved in racial profiling and excessive force—including the lack of review mechanisms for recurring misconduct—as evidenced by the incidents referenced in this pleading demonstrates this level of indifference.

128.    Defendant City, as part of its established customs, practices, and policies, consistently failed to supervise police officers, allowing the

continued and systematic use of intimidation, discrimination, and racially profiling tactics without consequence, resulting in the injuries and harms suffered by Mr. Abdul-Hafeez.

129.    Such inadequate supervision directly contributed to Mr. Abdul-Hafeez's unlawful detention and arrest and physical harm suffered at the hands of Defendants because of excessive force, as the officers knew they would not face consequences for such actions, despite their duties to intervene when witnessing misconduct.

130.    Plaintiff's constitutional injuries would have been prevented had the City properly trained its employees in accordance with legal standards.

131.    Upon information and belief, the same officers involved in the three incidents shown on video where officers made decisions to (1) detain a Black male and not a white male, although both were involved in the same incident, (2) punch a Black man in his face forcibly and repeatedly and his fellow officers lay on top of his prone body and (3) aggressively push a Black man down with full force as he had his arms raised as a sign of "not resisting" and compliance make up the majority of the officers involved in the instant case where Mr. Abdul-Hafeez suffered unjustified violence and violations of his constitutional rights.

132.   A sergeant, in a supervisory role, was present to witness these abuses and/or participated in them.

## H.  EIGHTH CLAIM FOR RELIEF

## VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

### Failure to Discipline or Correct (City of Canton)

### Against Defendant City

133.   Plaintiff incorporates all paragraphs, as though fully set forth herein, and realleges all prior and subsequent paragraphs of this complaint and incorporates the same by reference.

134.   Mr. Abdul-Hafeez alleges that SDPD has a de facto policy of failing to adequately discipline and/or correct officers who engage in unconstitutional practices, such as racial profiling, unlawful detentions, and use of excessive force. Despite numerous documented incidents, complaints, and internal investigations, SDPD routinely condones or ratifies misconduct by its officers through minimal or nonexistent disciplinary actions.

135.   Defendant City, as part of its established customs, practices, and policies, consistently failed to discipline police officers, allowing the continued and systematic use of intimidation, discrimination, and racially profiling tactics without consequence.

136.    Defendant's failure to provide adequate discipline and correction of police officers entrusted with significant authority, including the use of deadly weapons, fosters a custom, practice, and policy within SDPD that allows officers to engage in the alleged misconduct without accountability.

137.    Defendant's deliberate indifference to these failures directly contributed to the physican and mental injuries suffered by Mr. Abdul-Hafeez.

138.    By neglecting their duty to protect the public from official misconduct through proper discipline of officers, Defendants enabled the systemic violations that caused the harm alleged.

139.    The repeated failure to discipline officers, even in the face of clear evidence of constitutional violations, illustrates the City's approval of these unlawful practices. This failure to impose meaningful consequences emboldens officers to continue engaging in unconstitutional behavior without fear of reprisal. As a direct result of this policy, Mr. Abdul-Hafeez was subjected to unlawful detention and excessive force and the injuries set forth in this Complaint.

140.    Further, upon information and belief, the same officers who violated Mr. Abdul-Hafeez's constitutional rights and exacted violence on him, resulting in physical and emotional injury, continued the same aggressive behavior as shown in the videos referenced herein.

141.   A sergeant, in a supervisory role, was present to witness these abuses and/or participated in them.

142.   Despite this, upon information and belief, none of the officers involved were disciplined, corrected, or written up for the abuses.

143.   Upon information and belief, there are numerous similar cases in recent years that would demonstrate SDPD officers' pattern of engaging in the alleged behaviors that violate the public's constitutional rights.

144.   Upon information and belief, this proof will be obtained during the Discovery phase of the case. Plaintiff believes he has met the requisite pleading requirements to sustain any challenges.

## I. NINTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### Against the Officers and Defendant City

145.   Plaintiff incorporates all paragraphs, as though fully set forth herein, and realleges all prior and subsequent paragraphs of this complaint and incorporates the same by reference.

146.   This claim arises under the general laws of California, inclusive of Civil Code § 1714.

147.   Plaintiff has complied with the California Tort Claims Act.

148.   As a proximate result of Defendants' deliberately indifferent, shocking and oppressive acts and/omissions as alleged throughout this entire complaint, Defendants caused Mr. Abdul-Hafeez to suffer severe emotional distress, thereby harming Mr. Abdul-Hafeez.

149.   As a result of the actions of Defendants, Mr. Abdul-Hafeez has suffered mental anguish, has required medical treatment, and has experienced disruptions in work and personal relationships.

150.   Defendant City is liable to Mr. Abdul-Hafeez for the acts of its public employees, the individual Defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

### J.   TENTH CLAIM FOR RELIEF

### ASSAULT

### Against the Officers and Defendant City

151.   Plaintiff incorporates all preceding paragraphs, as though fully set forth herein.

152.   This cause of action arises under the general laws and Constitution of the State of California.

153.   Plaintiff has complied with the California Tort Claims Act.

154.   Mr. Abdul-Hafeez contemplated and feared harmful and unwanted touching by the Officers, who each had the present ability to do so.

155.   As a proximate result of Defendants' acts and/omissions as alleged throughout this entire complaint, Defendants assaulted Mr. Abdul-Hafeez.

156.   Defendant City is liable to Plaintiff for the acts of its public employees, the individual Defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

157.   Plaintiff incorporates all preceding paragraphs, as though fully set forth herein.


**K.  ELEVENTH CLAIM FOR RELIEF**

**BATTERY**

**Against the Officers and Defendant City**

158.   Plaintiff incorporates all preceding paragraphs, as though fully set forth herein.

159.   This cause of action arises under the general laws and Constitution of the State of California.

160.   Plaintiff has complied with the California Tort Claims Act.

161.   Mr. Abdul-Hafeez was touched by the Officers in a harmful and unwanted manner.

162.   As a proximate result of Defendants' acts and/omissions as alleged throughout this entire complaint, Defendants battered Mr. Abdul-Hafeez.

163.   Defendant City is liable to Plaintiff for the acts of its public employees, the individual Defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

## L.  TWELFTH CLAIM FOR RELIEF

### VIOLATION OF CALIFORNIA CIVIL CODE § 52.1

### Against the Officers and Defendant City

164.   Plaintiff incorporates all preceding paragraphs, as though fully set forth herein.

165.   Defendants violated Mr. Abdul-Hafeez's clearly established rights under the United States and California Constitutions, as well as state and federal law, which include, but are not limited to, the following: (i) First Amendment to the United States Constitution (violated by the Officers) (ii) Fourteenth Amendment to the United States Constitution (violated by the Officers) (iii) Fourth Amendment to the United States Constitution (violated by the Officers) (iv) California Constitution, Article 1: § 1 - Right to Happiness and Privacy (violated by the Officers); § 2 - Right to Free Speech (violated by the Officers); § 7 - Right to Due Process (violated by the Officers); and § 13 - Right to Protection against Unreasonable Searches and Seizures (violated by the Officers).

166.   Defendants violated Mr. Abdul-Hafeez's clearly established rights under the laws of the United States and California by threats, intimidation, force, and/or coercion. Further, each act and/or violation of rights done by each Defendant to Mr. Abdul-Hafeez was done by way of threats, intimidation, force, and/or coercion beyond that inherent in each act and/or violation of rights itself.

167.   Defendant City is liable to Mr. Abdul-Hafeez for the acts of its public employees, the individual Defendants herein, for conduct and/or omissions herein alleged, pursuant to the doctrine of Respondeat Superior, codified at California Government Code § 815.2.

(i) Violation of the First Amendment of the United States Constitution

1.   Plaintiff was exercising his constitutional right to free speech by filming the police.

2.   Defendant Officers retaliated against Plaintiff for engaging in this protected activity by unlawfully detaining, searching, arresting, citing, and using force against Plaintiff, thereby chilling his exercise of free speech in violation of the First Amendment.

(ii) Violation of the Fourteenth Amendment of the United States Constitution

1.   Plaintiff's rights to equal protection and due process under the Fourteenth Amendment were violated when Defendant Officers unlawfully detained,

arrested, and used excessive force against him without any reasonable

suspicion or probable cause, based on racial profiling or arbitrary law

enforcement actions.

2. Defendant Officers' conduct amounted to an arbitrary abuse of power,

depriving Plaintiff of his substantive due process rights to liberty, bodily

integrity, and equal protection of the law.

(iii) Violation of the Fourth Amendment of the United States Constitution

1. Defendant Officers violated Plaintiff's Fourth Amendment rights by

subjecting him to an unlawful search and seizure without reasonable

suspicion, probable cause, or a warrant.

2. Plaintiff was unreasonably seized, detained, and subjected to excessive

force by Defendant Officers during an encounter that was not justified

under the law.

(iv) Violation of the California Constitution, Article 1

a. § 1 - Right to Happiness, Safety, and Liberty

Defendant Officers unlawfully intruded upon Plaintiff's right to enjoy his

liberty and pursuing and obtaining happiness and security by detaining,

searching, and using force against him without legal justification.

b. § 2 - Right to Free Speech

Defendant Officers violated Plaintiff's right to free speech by retaliating against him for engaging in constitutionally protected speech, as described above.

    c.  § 7 - Right to Due Process

Defendant Officers, through their arbitrary and unlawful detention, use of excessive force, and racial profiling, deprived Plaintiff of his rights to due process and equal protection under the California Constitution.

    d.  § 13 - Protection against Unreasonable Searches and Seizures

Defendant Officers violated Plaintiff's right to be free from unreasonable searches and seizures when they detained, arrested, and used force without any lawful basis, violating the protections guaranteed under the California Constitution.

## NATURE OF ALL DEFENDANTS' ACTIONS

168.  Defendants acted maliciously and oppressively in violating Mr. Abdul-Hafeez's clearly established rights under United States and California law by threats, intimidation, force, and/or coercion.

169.  As a result of Defendants' unlawful conduct as alleged herein, Mr. Abdul-Hafeez suffered, and will continue to suffer, the above stated

damages in an amount according to proof, including attorney fees and costs, to remedy the unlawful conduct.

## **PRAYER FOR RELIEF**

170. WHEREFORE, Mr. Abdul-Hafeez prays for the following relief from Defendants, and each of them, for each of the above causes of action:

(i) For compensatory damages, including general and special damages, according to proof;

(ii) For punitive damages pursuant to 42 U.S.C. §1983 and California Civil Code §§ 3294 and 52.1(b), and any other applicable laws or statutes, in an amount sufficient to deter and make an example of each non-governmental entity Defendant;

(iii) For statutory damages, according to proof;

(iv) For prejudgment interest, according to proof;

(v) For reasonable attorney fees pursuant to 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52.1, 52(b)(3); California Code of Civil Procedure § 1025.1; and any other applicable provisions;

(vi) For costs of suit; and

(vii) For such further relief which is just and proper.

//

//

Dated: June 23, 2025                    Respectfully submitted,

By: _____
    Scott Dreher, Esq.

    _____
    Geneviéve L. Jones-Wright, Esq., LL.M.
    Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury in this action.

Dated: June 23, 2025                    Respectfully submitted,

By: _____
    Scott Dreher, Esq.

    _____
    Geneviéve L. Jones-Wright, Esq., LL.M.
    Attorneys for Plaintiff

//

//

//

THIRD AMENDED COMPLAINT                    24-cv-1184-RSH-MMP